58 P.3d 1229

CITY AND COUNTY OF HONOLULU, a municipal corporation of the State of Hawai'i, Plaintiff–Appellee/Cross–Appellee/Cross–Appellant,

v.

James Douglas keauhou ING, Robert Kalani Uichi Kihune, Constance Hee Lau, Diane Joyce Plotts, and Charles Nainoa Thompson as Trustees under the Will and of the Estate of Bernice Pauahi Bishop, Deceased, Defendants–Appellants/Cross–Appellees,

and

Catherine Mary Banning, Trustee of the Catherine Mary Banning Revocable Trust Agreement dated October 25, 1979; Germaine Hope Brennan, Trustee under that certain unrecorded Revocable Trust of Germaine Hope Brennan dated August 28, 1981, as amended; Charmaine Sui Man Chan; Bruce D. Dugstad, Successor Trustee under that certain Revo-

cable Living Trust Agreement dated August 27, 1980; First Hawaiïan Bank and Marie Ryan and Elizabeth Perry, as Trustees of the John Joseph Ryan and Marie Rayan Revocable Living Trust, established by that certain unrecorded Trust Agreement dated August 6, 1991, as amended and restated by instrument dated February 16, 1993, and as further amended by instruments dated November 10, 1993 and October 14, 1996; Lola Gebauer, as Trustee under an unrecorded Lola Gebauer Revocable Trust Agreement dated April 28, 1980, and subsequently amended in its entirety by an Amendment dated December 8, 1982, and a Second Amendment dated December 26, 1997; Paul W. Gebauer, as Trustee under an unrecorded Paul W. Gebauer Trust Agreement dated April 28, 1980, and subsequently amended in its entirety by an Amendment dated December 8, 1982, and a Second Amendment dated December 26, 1997; Patricia G. Hufford, Trustee under that certain Declaration of Revocable Trust of Patricia G. Hufford dated May 10, 1982; Robert W. Hufford Trustee under that certain Declaration of Revocable Trust of Robert W. Hufford dated May 10, 1982; Edward Burrnett Keyes, Jr.; Sakiko Kishimoto, Trustee under that certain unrecorded Trust Agreement known as the Sakiko Kishimoto Trust dated January 11, 1989; Barbara Wei Lau; Jennifer Hwei–May Lau; Lyman P. Macharg and Carlye Macharg, III, Trustee of the Lyman P. Macharg Trust dated August 24, 1979, as restated; Jean Marie Morel; Dorothy Nagle and Ira Nagel, Trustees of the Dorothy Nagel Revocable Living Trust Under that certain unrecorded Trust Agreement dated November 28, 1989; John Herbert Poag, Ruth G. Rand, Trustee under that certain unrecorded Ruth G. Rand, Trustee under that certain unrecorded Ruth G. Rand Revocable Trust Agreement dated May 30, 1986; Katherine Rogers Randall, Successor Trustee of the Kennedy

Randall, Jr. Trust under that certain unrecorded Trust Agreement dated August 6, 1985; Mary H. Shelton, Trustee under that certain unrecorded Charles O. Shelton, Jr. and Mary H. Shelton Joint Living Trust Agreement dated September 20, 1993; Charles Cook Spalding, as Trustee under that certain unrecorded instrument known as the Spalding 1993 Revocable Trust dated November 29, 1993; Norma Ann Stillwell; Jeannette J. Warren, as Trustee under unrecorded Revocable Living Trust Agreement dated August 19, 1987; Henry Paul Weber, Trustee under unrecorded Revocable Living Trust Agreement dated January 12, 1979, as amended; Mary Ilma Costigan Anderson, Trustee under Declaration of Trust dated May 25, 1984; Gerald Henry Cutter; Dan H. Devaney, III, Trustee of the Dan H. Devaney, III Revocable Living Trust dated October 7, 1993; Kathleen Hsiung; Yoo Youp Koo; Mayumi Lozano; Steven Jon Berman; Heidi Yuen Berman; Annalisa Bos, Trustee under unrecorded Living Trust of Annalisa Bos dated May 1, 1989; Cedric (NMN) Choi; Wallace David Loo; Marjorie Anne Loo; James B. Shaw, Trustee under that certain unrecorded James B. Shaw Revocable Living Trust Agreement dated June 4, 1990, Defendants–Appellees/Cross–Appellants/Cross–Appellees,

and

John Does 1–200; Mary Does 1–200; Doe Partnerships 1–100; Doe Corporations 1–100; Doe Entities 1–100, Defendants.

No. 24188.

Supreme Court of Hawai'i.

Dec. 9, 2002.

**185**

Ann C. Teranishi and Lex R. Smith, Honolulu, (of Kobayashi, Sugita & Goda), on the briefs, for the plain tiff-appellee/cross-appellee/cross-appellant, City and County of Honolulu.

Robert A. Marks, Warren Price, III, and Terence S. Yamamoto, Honolulu, (of Price Okamoto Himeno & Lum), on the briefs, for the defendants-appellants/cross-appellees, James Douglas Keauhou Ing, et al.

Martin Anderson, Mark B. Desmarais and Mavis M. Masaki, Honolulu, (of Goodsill Anderson Quinn & Stifel), on the briefs, for the defendants-appellees/cross-appellants/cross-appellees, Catherine Mary Banning, et al.

MOON, C.J., LEVINSON, NAKAYAMA, RAMIL and ACOBA, JJ.

## Opinion of the Court by LEVINSON, J.

The defendants-appellants/cross-appellees James Douglas Keauhou Ing, Robert Kalani Uichi Kihune, Constance Hee Lau, Diane Joyce Plotts, and Charles Nainoa Thompson, as Trustees under the Will and of the Estate of Bernice Pauahi Bishop, Deceased [hereinafter, "the Trustees"], appeal from the findings of fact, conclusions of law, decision on public use, and stay, filed on March 29, 2001 by the first circuit court, the Honorable Eden Elizabeth Hifo presiding, in an eminent domain action brought by the plaintiff-appellee/cross-appellee/cross-appellant City and County of Honolulu [hereinafter, "the City"] to condemn real property owned by the

Trustees underlying The Kahala Beach condominium development. The circuit court entered its decision in favor of the City and the defendants-appellees/cross-appellants/cross-appellees Catherine Mary Banning, Trustee of the Catherine Mary Banning Revocable Trust Agreement dated October 25, 1979, et. al [hereinafter, "the Lessees"], and against the Trustees, concluding that the "use for which the [Trustees'] real property ... is sought to be condemned ... is a *public use* within the meaning of Hawai'i Revised Statutes [ (HRS) ] Chapter 101 and Revised Ordinances of Honolulu [ (ROH) ] Chapter 38." (Emphasis in original.)

The Trustees argue on appeal that the circuit court erred in its determination regarding public use on the bases that: (1) Rules for Residential Condominium, Cooperative and Planned Development Leasehold Conversion [hereinafter, "Rules"] § 2–3 (1993),[1] promulgated by the City's Department of Housing and Community Development [hereinafter, "the Department"], is invalid and conflicts with ROH § 38–2.2 (1991),[2] because Rules § 2–3 impermissibly lowers the minimum number of applicants required to trigger ROH ch. 38 proceedings pursuant to ROH § 38–2.2, and, therefore, the City failed to obtain the minimum number of applicants necessary to trigger lease-to-fee conversion of The Kahala Beach; (2) the City failed properly to qualify The Kahala Beach applicants pursuant to ROH ch. 38, because it did not adopt any rules defining the elements of proof necessary to establish "residency" and "possessory control"; (3) the City violated Rules § 1–2 (1993)[3] and ROH ch. 38 by qualifying as applicants for lease-to-fee conversion certain trustees who held their condominiums units in trust; (4) The Kahala Beach is ineligible for ROH ch. 38 lease-to-fee conversion because HRS § 46–1.5(16) (Supp.2000)[4] prohibits the City from selling or otherwise disposing of oceanfront

---

1. Rules § 2–3 provided in relevant part:
 Not less than 25 condominium owners by number, or 50% of the condominium owners of a development, whichever shall be the lesser number, must apply as a condition precedent to the exercise of the power of eminent domain or the threat of eminent domain by the City.
 The Department amended Rules § 2–3 on December 22, 2000 in respects not material to the present appeal.

2. ROH § 38–2.2 provides in relevant part:
 (a) Subject to subsection (b) of this section, the [D]epartment may designate all or that portion of a development containing residential condominium land for acquisition, and facilitate the acquisition of the applicable leased fee interests in that land by the [C]ity through the exercise of the power of eminent domain or by purchase under threat of eminent domain, after:
 (1) At least 25 of all the condominium owners within the development or at least owners of 50 percent of the condominium units, whichever number is less, apply to the [D]epartment to purchase the leased fee interest pursuant to Section 38–2.4, and file an application with the [D]epartment; and
 (2) Due notice is given and a public hearing held [and] the [D]epartment finds that the acquisition of the leased fee interest in the development or a portion thereof, through exercise of the power of eminent domain or by purchase under threat of eminent domain and the disposition thereof as provided in this part, will effectuate the public purposes of this chapter.

 For purposes of this subsection, "condominium owners" means the owner-occupants of the condominium development.
 (b) This land designated and acquired by the [C]ity may consist of a portion of or the entirety of the land area submitted to the declaration of condominium property.

3. Rules § 1–2 provides in relevant part:
 "Lessee" means a natural person to whom land is leased or subleased, including the person's heirs, successors, legal representatives and assigns, and who is also concurrently the owner-occupant of a residential condominium. . . .
 The Department amended Rules § 1–2 on December 22, 2000 in respects not material to the present appeal.

4. HRS § 46–1.5(16) provides:
 Each county shall have the power to purchase and otherwise acquire, lease, and hold real and personal property within the defined boundaries of the county and to dispose of the real and personal property as the interests of the inhabitants of the county may require, except that: any property held for school purposes may not be disposed of without the consent of the superintendent of education; *no property bordering the ocean shall be sold or otherwise disposed of;* and all proceeds from the sale of park lands shall be expended only for the acquisition of property for park or recreational purposes.
 (Emphasis added.)

property; (5) the City failed properly to designate specific units for condemnation as required by ROH §§ 38–2.2, *see supra* note 2, and 38–5.2;[5] and (6) the circuit court should not have followed the prior ruling of the Honorable James R. Aiona, Jr., in a related declaratory judgment action, as "law of the case."[6]

The City and the Lessees each cross-appeal from the circuit court's decision and contend that the circuit court erred in concluding: (1) that HRS § 101–34 (1993)[7] permits an interlocutory appeal in the present matter; (2) that HRS § 101–34 mandates a stay of the valuation trial pending resolution of the appeal of the decision on public use; (3) that the condemnation action must be dismissed if the number of applicants falls below the requisite minimum number at any time during the proceedings; and (4) that the City must maintain the statutory minimum number of applicants solely out of the class of lessees whose units were originally designated by the City.

For the reasons discussed *infra* in section III, we hold: (1) that, pursuant to HRS § 101–34, the Trustees are entitled as of right to an interlocutory appeal of the circuit court's decision regarding public use; (2) that the City adopted adequate rules governing proof of "residency" and "possessory control"; and (3) that, pursuant to this court's decision in *Coon v. City and County of Honolulu*, 98 Hawai'i 233, 47 P.3d 348 (2002), (a) the circuit court erred in concluding that the use for which the Trustees' property is sought constitutes a "public use," because the City failed to obtain the minimum number of applications necessary to trigger lease-to-fee conversion of The Kahala Beach, (b) the circuit court correctly concluded that the City did not violate Rules § 1–2 and ROH ch. 38 by qualifying certain trustees as applicants for lease-to-fee conversion, and (c) the circuit court correctly concluded that The Kahala Beach is eligible for lease-to-fee conversion, notwithstanding HRS § 46–1.5(16). We decline to address the parties' remaining points of error on appeal because, in light of the foregoing, they are moot and, in some cases, purely hypothetical. Accordingly, we vacate the circuit court's decision regarding public use in part and remand the matter for the circuit court to dismiss the City's condemnation action.

## I. BACKGROUND

The present appeal arises from an eminent domain action in which the City seeks to condemn, pursuant to ROH ch. 38[8] and HRS

5. ROH § 38–5.2 provides in relevant part:

Within 12 months after the designation of the development or portion thereof for acquisition, the [D]epartment shall facilitate the acquisition of the leased fee interest in the land beneath the development of the City and County of Honolulu through voluntary action of the parties, or the institution of eminent domain proceedings to acquire the leased fee interest or portion thereof so designated. . . .

6. As discussed more fully *infra*, the Trustees' first, third, and fourth points were addressed by this court in *Coon v. City and County of Honolulu*, 98 Hawai'i 233, 47 P.3d 348 (2002), after the Trustees filed their briefs in the present appeal. Oddly, however, none of the parties have supplemented their briefs in the wake of *Coon*.

7. HRS § 101–34 provides:

**Issue as to use may be set for immediate trial.** If the defendant in the defendant's answer, or in return to the order to show cause, issued under section 101–28, denies that the use for which the property sought to be condemned is a public use, or a superior public use within the meaning of section 101–7, the issue may, upon the motion of any party, be set for immediate trial, without a jury and without regard to position on the calendar. Notwithstanding any provision of section 641–1, an interlocutory appeal shall lie from the decision on the issue as of right, and the appeal shall be given precedence in the supreme court. Failure of the defendant to raise the issue within ten days after service of an order granting immediate possession shall be deemed an admission that the use is a public use or a superior public use, as the case may be.

8. ROH ch. 38 authorizes the City, under certain circumstances, to acquire a landowner's fee simple interest in the land beneath condominium developments in order to convey fee simple title to the condominium unit owners who desire to own, rather than lease, the fee simple interest in the land. *See* ROH ch. 38, arts. 1 & 2; *Coon*, 98 Hawai'i 233, 47 P.3d 348.

For a more detailed account of the factual and procedural background preceding the City's con-

ch. 101,[9] the Trustees' leased fee interests in The Kahala Beach condominium development located in the City and County of Honolulu. The Kahala Beach, which is built upon real property bordering the ocean, comprises 196 leasehold condominium units, most of which are owned by corporations or out-of-state residents. On November 20, 1997, the Department informed the Trustees that it had received a sufficient number of applications from lessees of The Kahala Beach to commence ROH ch. 38 proceedings. On November 21, 1997, the City published a Notice of Public Hearing on Request for Designation of The Kahala Beach, pursuant to ROH ch. 38 and Rules § 2–6 (1993).[10] Shortly thereafter, the City provided the Trustees with an application log, dated December 5, 1997, listing the applications for lease-to-fee conversion of twenty-three condominium owners. On February 2, 1998, the Department formally designated "all or a portion" of the land under The Kahala Beach for acquisition pursuant to ROH ch. 38.

On January 29, 1999, the City filed its complaint in the present matter (which it amended several times thereafter), in which it sought to condemn certain leased fee interests in The Kahala Beach. On February 22, 1999, the Trustees filed their answer to the City's amended complaint, in which they denied, *inter alia,* that "the use for which the property sought to be condemned is a public use or a superior public use within the meaning of [HRS] § 101–7" and demanded a "trial by jury of all issues so triable." The Trustees' principal contention was that the City's action was barred because "the City [had] failed to comply with the . . . requirements established by" ROH ch. 38.

On March 20, 2001, after the Trustees had filed several unsuccessful motions—either to dismiss the amended complaint or for summary judgment—which challenged the City's compliance with ROH ch. 38 in various respects, and unsuccessfully appealed the circuit court's orders to this court,[11] the Trustees filed a limited waiver of de-

demnation action below, *see Coon,* 98 Hawai'i at 240–44, 47 P.3d at 355–59.

9. HRS ch. 101 governs the exercise of the power of eminent domain.

10. Rules § 2–6 provided in relevant part:

> *After the review and preliminary approval of the required minimum number of approved applicants, the director shall give public notice of the request for designation* of the development for acquisition of the leased fee by the City through the exercise of the power of eminent domain or by purchase under the threat of eminent domain. The notice shall also indicate the time and place of a public hearing to be held for the purpose of public discussion of the requested designation. . . .

(Emphasis added.) The Department amended Rules § 2–6 on December 22, 2000 in respects not material to the present appeal. In the present matter, the circuit court found that twenty-four owner-occupants of The Kahala Beach had applied to the City for lease-to-fee conversion on November 21, 1997. Neither the City nor the Lessees have challenged the foregoing finding of fact on appeal.

11. On September 22, 1999, the Trustees filed a motion to dismiss the amended complaint, in which they argued that The Kahala Beach is ineligible for lease-to-fee conversion because HRS § 46–1.5(16), *see supra* note 4, prohibits the City from disposing of oceanfront property. The

circuit court, the Honorable Kevin S.C. Chang presiding, denied the motion on January 4, 2000.

On January 21, 2000, the Trustees filed a motion for summary judgment, in which they argued that the City had failed to properly designate The Kahala Beach for lease-to-fee conversion pursuant to ROH §§ 38–2.2 and 38–5.2, *see supra* notes 2 and 5, because the City had not designated the leased fee interests in specific condominium units for conversion. The circuit court, the Honorable Eden Elizabeth Hifo presiding, denied the motion on April 11, 2000.

On July 20, 2000, the Trustees filed a motion for summary judgment for lack of public use, in which they argued that the condemnation action must be dismissed because: (1) the City had neglected to adopt rules for establishing proof of "residency" and "possessory control," as mandated by ROH ch. 38; (2) the City did not have the minimum number of qualified applicants required to trigger lease-to-fee conversion pursuant to ROH ch. 38; (3) the City had not maintained the minium number of applicants during the pendency of the proceedings; (4) the City had illegally qualified certain trustees for lease-to-fee conversion; and (5) HRS § 46–1.5(16), *see supra* note 4, prohibited the City from disposing of oceanfront property such as The Kahala Beach. The circuit court, the Honorable Eden Elizabeth Hifo presiding, denied the Trustees' motion on September 28, 2000.

On October 28, 2000, the Trustees appealed the rulings on public use reflected in the circuit court's April 11, 2000 and September 28, 2000

fense to permit a decision on the issue of public use. Specifically, the Trustees waived the following alleged factual defenses: (1) that the City had failed to obtain and maintain a sufficient number of applicants to initiate and complete lease-to-fee conversion pursuant to Rules § 2–3 (the rule that the Trustees argued was invalid); and (2) that the Lessees (aside from those whose condominiums were held in trust) did not meet all of the qualifications set forth in ROH § 38–2.4(a) or the rules promulgated thereunder. The Trustees conditioned their waiver on (1) the circuit court entering its decision on public use in substantially the form in which it did and (2) the circuit court staying trial on the issue of valuation of the property pending the present appeal.

On March 29, 2001, the circuit court entered its findings of fact, conclusions of law, decision on public use, and stay, in which it concluded: (1) that, based on the prior ruling of the first circuit court, the Honorable James R. Aiona, Jr. presiding (which it deemed to be law of the case), Rules § 2–3 is authorized by ROH ch. 38 and, therefore, the City obtained a sufficient number of applicants to initiate lease-to-fee conversion of The Kahala Beach; (2) that, based on *Housing Finance and Dev. Corp. v. Takabuki*, 82 Hawai'i 172, 921 P.2d 92 (1996) [hereinafter, "*Takabuki II* "], the City must maintain the required minimum number of applicants throughout the condemnation proceeding and acquire at least the minimum number of units out of the units that were originally designated for lease-to-fee conversion; (3) that Rules § 1–2 adequately set forth the rules required to establish proof of "residency" and "possessory control" pursuant to ROH § 38–1.2; (4) that units held in trust are eligible for lease-to-fee conversion; and (5) that HRS § 46–1.5(16) does not preclude the City from condemning oceanfront property pursuant to ROH ch. 38. Consequently, the circuit court further concluded that "the use for which the real property in controver-

sy herein is sought to be condemned pursuant to the allegations contained in the complaints, as amended and filed herein, is a *public use,* within the meaning of [HRS Ch.] 101 and [ROH ch.] 38." (Emphasis in original.) Finally, the circuit court stayed further proceedings in the circuit court, including discovery, on the issue of valuation until resolution of the Trustees' interlocutory appeal of the issue of public use, if taken, or thirty days from the date of its decision.

The Trustees filed a timely notice of appeal pursuant to HRS § 101–34, *see supra* note 7, on March 30, 2001.

## II. *STANDARDS OF REVIEW*

### A. *Statutory Interpretation*

We review the circuit court's interpretation of a statute *de novo. State v. Pacheco,* 96 Hawai'i 83, 94, 26 P.3d 572, 583 (2001). Our statutory construction is guided by established rules:

> When construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.
>
> When there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists. . . .
>
> In construing an ambiguous statute, "[t]he meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning." HRS § 1–15(1) [ (1993) ]. Moreover, the courts may resort to extrinsic aids in determining legislative intent. One ave-

orders, pursuant to HRS § 101–34, *see supra* note 7, but this court dismissed the appeal on January 21, 2001, because we found that the circuit court had not yet decided the issue of public use.

nue is the use of legislative history as an interpretive tool.

> ... This court may also consider "[t]he reason and spirit of the law, and the cause which induced the legislature to enact it ... to discover its true meaning." HRS § 1–15(2) (1993).

*Id.* at 94–95, 26 P.3d at 583–84 (some citations and internal quotation marks added and some in original) (brackets in original). Moreover,

> [w]hen interpreting a municipal ordinance, we apply the same rules of construction that we apply to statutes. The interpretation of a statute is a question of law reviewable *de novo*. The purpose of the ordinance may be obtained primarily from the language of the ordinance itself; however, in order to construe the ordinance in a manner consistent with its purpose, the language must be read in the context of the entire ordinance.

*Weinberg v. City and County of Honolulu,* 82 Hawai'i 317, 322, 922 P.2d 371, 377 (1996) (citations and internal quotation marks omitted).

*Coon,* 98 Hawai'i at 245, 47 P.3d at 360.

## B. *Deference To The Decisions Of Administrative Agencies*

 "Ordinarily, deference will be given to decisions of administrative agencies acting within the realm of their expertise[.]" *Mahaúlepu v. Land Use Comm'n,* 71 Haw. 332, 335, 790 P.2d 906, 908 (1990) (citation omitted). "The rule of judicial deference, however, does not apply when the agency's reading of the statute contravenes the legislature's manifest purpose." *In re Water Use Permit Applications,* 94 Hawai'i 97, 145, 9 P.3d 409, 457 (2000) (citing *Camara v. Agsalud,* 67 Haw. 212, 216, 685 P.2d 794, 797 (1984), and *State v. Dillingham Corp.,* 60 Haw. 393, 409, 591 P.2d 1049, 1059 (1979)). "Consequently, we have not hesitated to reject an incorrect or unreasonable statutory construction advanced by the agency entrusted

with the statute's implementation." *Id.; see also Government Employees Ins. Co. v. Dang,* 89 Hawai'i 8, 15, 967 P.2d 1066, 1073 (1998); *In re Maldonado,* 67 Haw. 347, 351, 687 P.2d 1, 4 (1984).

*Id.*

## III. DISCUSSION

### A. *HRS § 101–34 Permits An Interlocutory Appeal From An Adverse Decision On The Issue Of Public Use In A Condemnation Action.*

The City and the Lessees contend that the circuit court erred in concluding that HRS § 101–34, *see supra* note 7, permits an interlocutory appeal in the present matter and, consequently, that this court does not have jurisdiction to hear the Trustees' appeal. The City asserts (1) that the Trustees "did not 'properly raise' the public use issue, but rather twisted the trial and appellate court proceedings to accommodate its own desire to delay the condemnation proceedings," *i.e.*, that the Trustees waited too long to move for a trial on public use; and (2) that the circuit court's decision does not "qualify as a definitive decision" on the issue of public use for purposes of an interlocutory appeal, because it "could be nullified in the event that one of the [Trustees'] many conditions on its Waiver is not met." The Lessees go further and ask this court to "reconsider the wisdom of" *Takabuki v. Housing Finance and Dev. Corp.,* 72 Haw. 466, 822 P.2d 955 (1991) [hereinafter *Takabuki I* ], and *Housing Finance and Dev. Corp. v. Castle,* 79 Hawai'i 64, 898 P.2d 576 (1995)—which held that, pursuant to HRS § 101–34, a landowner may contest the issue of public use, including whether the prerequisites to lease-to-fee conversion have been met, in a condemnation action brought in furtherance of leasehold conversion, and has a right to an interlocutory appeal from an adverse decision on the issue of public use— "in light of the difference between traditional eminent domain and leasehold conversion." The Lessees urge us to overrule the foregoing authorities and hold that HRS § 101–34 does not apply to condemnation proceedings

brought in furtherance of lease-to-fee conversion. We find the City's and the Lessees' arguments to be without merit.

ROH ch. 38 directs the City to institute eminent domain proceedings to acquire property that has been properly designated for lease-to-fee conversion if the landowner refuses to sell the property voluntarily. *See* ROH § 38-5.2. But the City's power to acquire real property by means of eminent domain, regardless of the specific use for which the property is sought, is governed by HRS ch. 101. HRS § 101-13 (1993) provides in relevant part that,

> [w]henever any county deems it advisable or necessary to exercise the right of eminent domain in the furtherance of any governmental power, the proceedings may be instituted as provided in [HRS § ] 101-14 after the governing authority (county council, or other governing board in the case of an independent board having control of its own funds) of the county has authorized such suit by resolution duly passed, or adopted and approved, as the case may be.

HRS § 101-14 (1993) empowers "[a]ny county [to] institute proceedings ... for the condemnation of property within the county for any of the purposes provided in [HRS ch. 101, part I] which are within the powers granted to the county," and HRS § 101-2 (1993) permits the county to condemn "private property" for any "public use." ROH ch. 38 simply identifies one such "public use" and sets forth the procedures by which the City shall determine whether the acquisition of a particular parcel of property will further that public use.

"That does not mean, however, that the landowner has no means of contesting public use[.]" *Takabuki I*, 72 Haw. at 467, 822 P.2d at 956. The landowner has

> the right in the eminent domain proceedings under HRS § 101-34 to contest the public use, and that includes a contest of

whether or not the prerequisites to such a condemnation set forth in the various provisions of [ROH ch. 38,] such as ... the number of ... persons applying, etc., have been met. Issues raised as to those qualifications are factual issues which the landowner is entitled to try, *de novo*, before the circuit court in an evidentiary hearing, despite any previous determination with respect thereto by [the City].

*Id.* at 468, 822 P.2d at 956.

Thus, ROH ch. 38 does not substitute a set of condemnation procedures for those prescribed by the state legislature in HRS ch. 101, as the Lessees would have us hold.[12] Rather, as this court clearly explained in *Takabuki I*, 72 Haw. at 467–68, 822 P.2d at 956, *Castle*, 79 Hawai'i at 77–78, 898 P.2d at 589–90, and *Takabuki II*, 82 Hawai'i at 183, 921 P.2d at 103, condemnation is the means by which lease-to-fee conversion is accomplished. Consequently, whether the Trustees are entitled to an appeal from the circuit court's decision regarding the issue of public use in a condemnation action is governed by HRS ch. 101 and not by ROH ch. 38.

By the plain language of HRS § 101-34, *see supra* note 7, a party may move for a separate trial on the issue of public use at any time prior to ten days after service of an order granting immediate possession, and the party has a right to an interlocutory appeal therefrom. As this court noted in *Castle*, 79 Hawai'i at 77, 898 P.2d at 589 (quoting Hse. Stand. Comm. Rep. No. 19, in 1973 House Journal, at 753), the statute was intended to expedite the appeal of disputed decisions regarding the issue of public use and to "give[ ] the defendant, as a matter of right, an interlocutory appeal from an adverse decision on the issue as to [public] use[.]" Accordingly, this court held in *Castle* that it had "subject matter jurisdiction to decide an appeal from an order granting partial summary judgment on the issue of public use[.]" *Id.* at 78, 898 P.2d at 589.

---

12. Indeed, the city council does not have the authority to supplant the will of the state legislature in this way.

192

■ The Lessees urge us to deny the Trustees their right to a separate trial on the issue of public use and an interlocutory appeal therefrom and, concomitantly, to deny this court's jurisdiction to hear the present appeal, on the basis that "the Hawai'i State Legislature never contemplated [HRS § 101–34's] application in the leasehold conversion context." [13] Yet, the Lessees acknowledge that HRS § 516–23 (1993), part of the legislation governing lease-to-fee conversion through the instrumentality of the *state,* expressly provides in relevant part that "the [state] shall exercise its power of eminent domain in the same manner as provided in chapter 101." The Lessees submit that "HRS § 101–34 cannot be construed or interpreted in a vacuum—isolated from the purpose of HRS Chapter 516 or ROH Chapter 38." But, as noted above, the language of HRS § 101–34 is plain and unambiguous—a landowner is entitled to a separate trial on the issue of public use and an interlocutory appeal from an adverse decision on the issue—and, as the Lessees acknowledge, the legislature *did* expressly contemplate the application of HRS § 101–34 to lease-to-fee conversion.

In the present matter, the Trustees denied that the use for which their property was sought constituted a "public use" in their answer to the City's amended condemnation complaint. Consequently, they preserved their right to a separate decision on the issue of public use. By the same token, once the circuit court filed its decision on public use in favor of the City, the Trustees had a right to an interlocutory appeal.

■ The only argument that the City advances in this regard is that, because the circuit court's decision regarding public use was premised on the Trustees' "contingent, limited [w]aiver[,]" the circuit court's decision does not "qualify as a decision on the public use issue as required by statute." The only authority that the City cites in support of its proposition, however, is *Castle,* 79 Hawai'i 64, 89, 898 P.2d 576, 601 and we find nothing helpful to the City in that case. Moreover, the City does not specify what is objectionable about the Trustees' waiver, and we are unable to discern anything contained therein that should defeat their right to an interlocutory appeal.

The Trustees' waiver was "limited" in the sense that it forwent certain fact-based defenses, namely (1) that the City had not obtained and maintained a sufficient number of applicants for lease-to-fee conversion pursuant to Rules § 2–3 and (2) that the applicants (aside from the trustee applicants) did not qualify for lease-to-fee conversion pursuant to ROH § 38 2.4(a) and the Rules. The heart of the Trustees' challenge to the City's proposed leasehold conversion of The Kahala Beach throughout the course of the litigation has been that Rules § 2–3 is invalid, void, and unenforceable. The waiver simply expedited a judicial determination of the validity of Rules § 2–3 by foregoing the Trustees' defense that the City had failed even to comply with its own rules, thereby saving all the parties involved the time and expenses of additional discovery and adjudication.

The Trustees' waiver was "contingent" upon the circuit court (1) entering its decision on public use in substantially the form in which it did and (2) staying the trial on the issue of valuation until after a decision by this court regarding the merits of the Trust-

---

13. The Lessees argue that there is no need for a separate trial on the issue of public use and an interlocutory appeal therefrom in the context of lease-to-fee conversion because the condemning authority never takes physical possession of the leased fee interests. Moreover, they suggest that, if there were any threat of imminent harm, "the landowner could simply move for a stay pending appeal, pursuant to Rule 62 of Hawai'i Rules of Civil Procedure ('HRCP') or Rule 8 of the Hawai'i Rules of Appellate Procedure ('HRAP')." Of course, the availability of HRCP Rule 62 and

HRAP Rule 8 does not distinguish eminent domain actions in furtherance of lease-to-fee conversion from any other eminent domain actions. In any event, we believe that the Lessees underestimate the disruption that would result from lease-to-fee conversion followed by fee-to-leasehold *re* conversion after reversal on appeal. The Lessees' arguments are more appropriately addressed to the state legislature than to the judiciary because, as we have noted, the language of the HRS ch. 101 is plain and unambiguous.

ees' appeal. Both of these conditions were met when the circuit court filed its decision regarding public use and stay in the form that it did.[14] Thus, we are unable to discern why the fact that the Trustees waived certain defenses should jeopardize their right to appeal the circuit court's adverse decision against them on the issue of public use. Accordingly, we reject the City's arguments in this regard.

In sum, and to reiterate, we hold that the circuit court did not err in concluding that the Trustees were entitled to an interlocutory appeal of the circuit court's adverse decision on public use pursuant to HRS § 101–34. Accordingly, this court has jurisdiction to address the arguments advanced by the parties on appeal.

B. *The City's Condemnation Action Must Be Dismissed Because The City Did Not Receive The Minimum Number Of Applications For Lease–To–Fee Conversion Required By ROH § 38–2.2, As Interpreted By This Court In Coon.*

In *Coon,* 98 Hawai'i at 246–52, 47 P.3d at 361–67, this court held that Rules § 2–3, *see supra* note 1, conflicted with ROH § 38–2.2, *see supra* note 2, because Rules § 2–3 impermissibly lowered the minimum number of applicants required to trigger ROH ch. 38 proceedings pursuant to ROH § 38–2.2. Consequently, this court held that the City's designation of The Kahala Beach condominium development for lease-to-fee conversion was invalid, void, and unenforceable, because the Department did not receive a sufficient number of qualified applications from The Kahala Beach condominium owners and, therefore, exceeded its authority pursuant

ant to ROH § 38–2.2. *Id.* at 251, 47 P.3d at 366. Accordingly, in the present matter, the circuit court erred in concluding that Rules § 2–3 was valid and, inasmuch as the City did not receive applications for lease-to-fee conversion from twenty-five qualified owner-occupants prior to initiating ROH ch. 38 proceedings,[15] the circuit court further erred in deciding that "the use for which [The Kahala Beach] is sought to be condemned ... is a *public use* within the meaning of [HRS ch.] 101 and [ROH ch.] 38." (Emphasis in original.) Therefore, we reverse the circuit court's decision regarding public use and direct the circuit court to dismiss the condemnation action on remand.

In addition, we reaffirm our conclusions in *Coon,* 98 Hawai'i at 252–55, 258–60, 47 P.3d at 367–70, 373–75, (1) that HRS § 46–1.5(16), *see supra* note 4, does not prohibit ROH ch. 38 lease-to-fee conversions of oceanfront property and (2) that condominium owners are not barred from purchasing their leased fee interests pursuant to ROH ch. 38 simply because the legal title to their condominium unit is held in trust; accordingly, we reject the Trustees' arguments to the contrary.

Although the foregoing is outcome-dispositive of the present matter, we address one additional issue raised by the Trustees that is ripe for adjudication and will provide guidance to the parties involved in lease-to-fee conversion in the future.[16]

C. *The City Adopted Adequate Rules For Establishing Proof Of "Residency" And "Possessory Control" Pursuant to ROH Ch. 38.*

ROH § 38–1.2 defines "owner-occupant" to mean:

receive the minimum number of applicants prior to calling for a public meeting to discuss the proposed leasehold conversion.

14. Consequently, the City's contention that the conditional waiver somehow transformed the circuit court's decision regarding public use into a "conditional order" is simply a mischaracterization of the record.

15. Because The Kahala Beach comprises 196 condominium units, pursuant to ROH § 38–2.2, *see supra* note 2, the minimum number of qualified applicants required to trigger lease-to-fee conversion of the development is twenty-five (the lesser number between twenty-five and fifty percent of the condominium units). Pursuant to Rules § 2–6, *see supra* note 10, the City must

16. We decline to address the remaining points of error raised by the parties because, in light of the foregoing, they are now moot. First, because the present condemnation action must be terminated and any subsequent ROH ch. 38 proceeding involving The Kahala Beach will be conducted pursuant to the amended Rules, which expressly require the Department "to identify the individual residential condominium interests ... for which the City intends to acquire the leased fee

any individual in whose name sole or joint legal title is held in a residential condominium unit, ... which, simultaneous to the individual's ownership, serves as the individual's principal place of residence for a period of not less than one year immediately prior to application for conversion, as well as during the period pending legal proceedings to acquire the fee; provided that the individual shall retain complete possessory control of the premises of the residential unit during these periods. An individual shall not be deemed to have complete possessory control of the premises if the individual rents, leases, or assigns the premises for any period of time to any other person in whose name legal title is not held.

ROH § 38–1.2 further provides in relevant part that "[p]roof of residency and possessory control shall be as established by rules adopted by the [D]epartment." The Trustees argue that the City has failed to adopt rules governing proof of "residency" and "possessory control," as mandated by ROH § 38–1.2. We disagree.

Rules § 1–9 (1993) ("Burden of proof; oaths; affidavits.") provides that

[t]he party having the burden of proof of any fact or event[, including proof of residency and possessory control,] shall make such proof by competent and credible evidence and testimony acceptable and satisfactory to the director or his [or her] designated agent. Evidence at any hearing may be required to be given under oath or by sworn written material. An application may be required to be affirmed under oath. False oaths and affidavits shall constitute perjury and a violation of [HRS] § 710–1060. . . .

Thus, the Trustees are incorrect in their assertion that the Department failed to adopt rules governing the manner in which applicants must prove their residency and possessory control. Rules § 1–9 requires applicants to submit "competent and credible evidence and testimony" to prove that their condominium unit is their principal place of residence and that they have complete possessory control of the premises for the requisite period of time, and, in certain circumstances, further requires that evidence be "given under oath or by sworn written material." [17]

The Trustees' real complaint appears to be that the Department did not adopt rules *defining residency and possessory control in*

---

interests[ ]" in its designation of the development for lease-to-fee conversion, *see* Rules § 2–11 (2000), there is no need to address the Department's failure to designate specific units for conversion in the present matter.

Second, the circuit court's decision to follow a prior decision of another court of equal and concurrent jurisdiction or to stay a proceeding pending an interlocutory appeal will generally involve the exercise of discretion on some level. *See State v. Oughterson*, 99 Hawai'i 244, 255, 54 P.3d 415, 426 (2002) (recognizing that the circuit court's decision regarding law of the case may be wrong either as a matter of law or as an abuse of discretion); *Solarana v. Industrial Electronics, Inc.*, 50 Haw. 22, 30, 428 P.2d 411, 417 (1967) (holding that a stay pending a related appeal is within the circuit court's discretion); *McCaw v. Moore*, 39 Haw. 157 (1951) (noting the same); *Smythe v. Takara*, 26 Haw. 69 (1921) (admonishing the circuit court for not staying its hand pending the resolution of an interlocutory appeal by the appellate court); *see also Air Line Pilots Ass'n v. Miller*, 523 U.S. 866, 880, 118 S.Ct. 1761, 140 L.Ed.2d 1070 (1998) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time

and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." (Quoting *Landis v. North American Co.*, 299 U.S. 248, 254–255, 57 S.Ct. 163, 81 L.Ed. 153 (1936).)). Consequently, although the propriety of the foregoing decisions by the circuit court in the present matter might ultimately involve questions of law, prudence discourages us from reviewing them in a case in which the decisions have been rendered moot and the specific factual basis for the decisions will not arise again.

Finally, it would be pointless for us to address whether the City must maintain the minimum number of applicants solely out of the class of lessees whose units were originally designated by the City between designation and the completion of lease-to-fee conversion, because, in the present matter, the City failed to obtain the requisite number of applicants in the first place.

**17.** In fact, in the present matter, the Department required applicants to swear in their affidavits that they met all the qualifications of owner-occupants as defined in ROH ch. 38.

*more detail* than provided by ROH ch. 38, by *setting forth specific criteria*—such as, for example, the place in which an applicant files his or her resident tax return or is registered to vote—that an applicant must satisfy in order to qualify for leasehold conversion.[18] But ROH ch. 38 does not mandate that the Department promulgate rules setting forth more detailed definitions of "residency" or "possessory control" than are contained in ROH § 38–1.2, *see supra*, and Rules § 1–2 (1993) defines the terms consistently with the ordinance.[19] Furthermore, although the Trustees complain that the Department considered a host of factors in determining "owner-occupancy," none of which was dispositive, they do not cite any evidence that the Department's ultimate determination of any applicant's eligibility for leasehold conversion was, in fact, arbitrary or capricious. Finally, a Procrustean definition of "residency" or "possessory control," such as the Trustees seem to advocate, would likely undermine the ordinance's goal of preventing the displacement of owner-occupants "from the ranks of home-owners because of Oahu's continuing housing crisis[,]" Ordinance 91–95 § 1, by elevating form over substance, an approach we have repeatedly eschewed. *See, e.g., Coon*, 98 Hawai'i at 254, 47 P.3d at 369; *Dubin v. Wakuzawa*, 89 Hawai'i 188, 196, 970 P.2d 496, 504 (1998); *Konno v. County of*

---

*Hawai'i*, 85 Hawai'i 61, 72, 937 P.2d 397, 408 (1997).

Accordingly, the Trustees' arguments regarding proof of "residency" and "possessory control" are without merit.[20]

## IV. CONCLUSION

In light of the foregoing, we affirm in part and vacate in part the findings of fact, conclusions of law, decision on public use, and stay of the circuit court and remand the case for the circuit court to dismiss the City's condemnation action.

---

**18.** The Trustees accuse the Department of "failing to define the criteria necessary to determine 'owner-occupancy' status of applicants for relief under [HRS ch.] 38."

**19.** Rules § 1–2 defined "owner-occupant," and with it "residency" and "possessory control," to mean:

> any individual in whose name sole or joint legal title is held in a residential condominium unit ... which serves concurrently with such ownership as the individual's principal place of *residence* for a continuous and uninterrupted period of not less than one year immediately preceding an application for conversion, as well as during the legal proceedings to acquire the fee simple title. An owner-occupant must retain complete *possessory control* of the condominium unit ... throughout these periods and shall not be deemed to have complete *possessory control* if the condominium unit ... is rented, leased or assigned for any period of time to any other person who is not a legal owner, or an equitable owner under an Agreement of Sale, of the same condominium. The

[D]epartment may consider exceptions to the occupancy requirement based only on serious illness, employment requirements, military obligations, and educational sabbatical.

(Emphases added.) The Department amended Rules § 1–2 on December 22, 2000 to include "any individual in whose name sole or joint legal title *or equitable title* is held in a residential condominium unit," as well as in other respects not material to the present appeal. (Emphasis added.)

**20.** The Trustees' also argue that the Department "used arbitrary and capricious means for ascertaining" the number of owner-occupants who did not apply for lease-to-fee conversion (for the purposes of determining the minimum number of applicants required for lease-to-fee conversion pursuant to Rules § 2–3). But the issue is now moot in light of *Coon;* the Department will no longer need to determine the number of owner occupants who have not applied for lease-to-fee conversion in order to determine the requisite number of applicants.