124 P.3d 434

CITY AND COUNTY OF HONOLULU, a municipal corporation of the State of Hawai'i, Plaintiff–Appellee/Cross–Appellant/Cross–Appellee,

v.

Kathleen HSIUNG; James B. Shaw, Trustee under that certain James B. Shaw Revocable Living Trust Agreement dated June 4, 1990; Ruth G. Rand, Trustee under that certain unrecorded Ruth G. Rand Revocable Trust Agreement dated May 30, 1986; Deborah Darlene Dupire–Nelson; Robert Lee Dupire–Nelson; Ira Nagel and Dorothy Nagel, Trustees of the Dorothy Nagel Revocable Living Trust under that certain unrecorded Trust Agreement dated November 28, 1989; Barbara Wei Lau; Jennifer Hwei–May Lau; Dan H. Devaney, III, Trustee of the Dan H. Devaney, III Revocable Living Trust dated October 7, 1993; Cedric Choi; Patricia Choi; Mary Ilma Costigan Anderson, Trustee under Declaration of Trust dated May 25, 1984; Edward Burrnett Keyes, Jr.; Katharine Rogers Randall, Successor Trustee of the Kennedy Randall, Jr. Trust, under that certain unrecorded Trust Agreement dated August 6, 1985; Gerald Henry Cutter; Mildred P. Ault, Trustee under the Mildred P. Ault Revocable Trust dated July 23, 1987, as amended in full by First Amendment dated March 28, 1990; Mary H. Shelton, Trustee under that certain unrecorded Charles O. Shelton, Jr. and Mary H. Shelton Joint Living Trust Agreement dated September 20, 1993; Wallace David Loo; Marjorie Anne Loo; Lola Gebauer, Successor Trustee of the Paul W. Gebauer, unrecorded Paul W. Gebauer Revocable Trust Agreement dated April 28, 1980, and subsequently amended in its entirety by an Amendment dated December 8, 1982, and a Second Amendment dated December 26, 1997; Lola Gebauer, as Trustee under an unrecorded Lola Gebauer Revocable Trust Agreement dated April 28, 1980, and subsequently amended in its entirety by an Amendment dated December 8, 1982, and a Second Amendment dated December 26, 1997; William C. Dixon, Jr. and Patricia Dixon, as Trustees under certain unrecorded Dixon 1996 Trust dated November 21, 1996; Bruce D. Dugstad, Successor Trustee under that certain Revocable Living Trust Agreement dated August 27, 1980; Jean Marie Morel; Jeannette J. Warren, as Trustee under unrecorded Revocable Living Trust Agreement dated August 19, 1987, as amended; Marguerite Elizabeth Gonsalves; Harrison Clifford Gonsalves; Daniel Young Lee; Juliet Ok Lee; Steven Jon Berman; Heidi Yuen Berman; George Edward Isaacs; Shirley Mae Isaacs; Norma Ann Stilwell; First Hawaiian Bank, Paul C.T. Loo, and Violet S.W. Loo, Co–Trustees of the John Joseph Ryan and Marie Ryan Revocable Living Trust, established by that certain unrecorded Trust Agreement dated August 6, 1991, as amended and restated by instrument dated February 16, 1993, and as further amended by instruments dated November 10, 1993, October 14, 1996 and March 30, 1999; Derek Michael Poag; Erik Sterling; Ethel H. Bird, widow, as Trustee under an unrecorded Revocable Trust Agreement dated September 3, 1987; George Wm. Smith and Julia Smith, as Co–Trustees under the Geroge and Julia Smith Revocable Trust, dated March 10, 1987, Defendants–Appellants/Cross–Appellees,

and

James Douglas Keauhou Ing, Constance Hee Lau, Charles Nainoa Thompson, Diane Joyce Plotts, and Robert Kalani Uichi Kihune, Trustees under the Will and of the Estate of Bernice Pauahi Bishop, deceased, Defendants–Appellees/Cross–Appellees/Cross–Appellants,

and

Germaine Hope Brennan, Trustee under that certain unrecorded Revocable Trust of Germaine Hope Brennan dated August 28, 1981, as amended; Germaine Hope Brennan, Successor of Trustee under that certain unrecorded Revocable Trust of Edward Brennan dated August 28, 1981, as amended; Henry Paul Web-

er, Trustee under unrecorded Revocable Living Trust Agreement dated January 12, 1979, as amended, and Charles Cook Spaulding, as Trustee under that certain unrecorded instrument known as The Spaulding 1993 Revocable Trust; Sakiko Kishimoto, Trustee under that certain unrecorded Trust Agreement known as The Sakiko Kishimoto Trust dated January 11, 1989; John Does 1–200, Mary Doe 1–200; Doe Partnership 1–100; Doe Corporation 1–100; Doe Non–Profit Corporation 1–100; and Doe Entity 1–100, Defendants.

James Douglas Keauhou Ing, Constance Hee Lau, Charles Nainoa Thompson, Diane Joyce Plotts, and Robert Kalani Uichi Kihune, in their capacity as Trustees under the Will and of the Estate of Bernice Pauahi Bishop, deceased, and not in their individual capacities, Plaintiffs–Appellants,

v.

City and County of Honolulu; Department of Community Services, City and County of Honolulu, Defendants–Appellees,

and

John Does 1–30; Mary Does 1–30; Doe Partnerships 1–30; and Corporations and other Entities 1–30, Defendants.

No. 26544.

Supreme Court of Hawai‘i.

Dec. 8, 2005.

As Amended March 23, 2006.

Winston K.Q. Wong, Deputy Corporation Counsel, and Lex R. Smith, Ann C. Teranishi, and Jesse W. Schiel (of Kobayashi, Sugita, & Goda, Honolulu), on the briefs, for plaintiff-appellee/cross-appellant/cross-appellee City & County of Honolulu.

Martin Anderson, Joachim P. Cox, and Robert K. Fricke (of Goodsill Anderson Quinn & Stifel, Honolulu), on the briefs, for defendants-appellants/cross-appellees Kathleen Hsuing, et al.

James K. Mee, Paul S. Aoki, and Wayne P. Nasser (of Ashford & Wriston, Honolulu), on the briefs, for defendant-appellee/cross-appellee/cross-appellant Kamehameha School.

MOON, C.J., LEVINSON, ACOBA, and DUFFY, JJ.; and Circuit Judge PERKINS, in place of NAKAYAMA, J., recused.

Opinion of the Court by MOON, C.J.

The instant appeals involve a condemnation action initiated by the City and County of Honolulu (the City) and a related declaratory judgment action initiated by the trustees under the will and of the estate of Bernice Pauahi Bishop [hereinafter, the Trustees]. The condemnation action was initiated by the City to acquire the fee interest in the Kahala Beach residential condominium development (The Kahala Beach) in order to convey fee simple title to various owners of leasehold interests in The Kahala Beach [hereinafter, the Applicants or lessees]. The Trustees brought the declaratory judgment action seeking, *inter alia*, an injunction prohibiting the City from exercising its power of eminent domain over The Kahala Beach and a judgment declaring that, as applied to The Kahala Beach, Revised Ordinances of Honolulu (ROH) chapter 38 and the City's condemnation efforts were illegal and unconstitutional.

On appeal, the City and the Applicants [hereinafter, collectively, Appellants] claim that the Circuit Court of the First Circuit, the Honorable Eden Elizabeth Hifo presiding, erred in granting summary judgment in favor of the Trustees in the condemnation

action. Generally, Appellants argue that the court erred in ruling that the City did not have the requisite twenty-five qualified applicants necessary to initiate and maintain the condemnation proceedings. The Trustees cross-appeal, claiming that, although the circuit court ruled in their favor, the court erred in its interpretations of ROH chapter 38. With respect to the declaratory judgment action, the Trustees contend that the circuit court erred in dismissing their claims as moot. For the following reasons, we affirm the judgments of the circuit court. However, we remand the instant case for findings of fact and conclusions of law on the award of attorneys' fees.

## I. *BACKGROUND*

### A. *The Condemnation Action*

#### 1. The City's Initial and Amended Complaints

On February 14, 2003, the City filed a complaint in the Circuit Court of the First Circuit against the Trustees to condemn certain leased fee interests in Kahala Beach pursuant to Hawai'i Revised Statutes (HRS) § 101–13 (1993). The City filed an amended complaint on March 5, 2003.

On October 10, 2003, the City filed a motion to amend its amended complaint and, subsequently, filed an amended motion to amend on October 31, 2003. In its amended motion, the City requested leave to add additional applicants to the condemnation proceeding, specifically, Ethel H. Bird (Unit 252) and George WM. and Julia Smith (Unit 346).

The City's amended motion was heard on November 19, 2003. With respect to Bird and the Smiths, the court ruled:

> So, I grant the Motion to Amend by adding Bird and the Smiths. I can see no reason at all to leave them out. It doesn't make any sense to me that the City ... could find people who would be eligible either under the condominium or that the State of houselots and then say oh, well, I got to wait until I get another 25 of you to bring it. That is crazy and certainly inconsistent with the purpose of the law which was to put fee simple property in the hands of such owners.

> But, I do not think that those people can be used against or in the condemnation to constitute the minimum number that had to be there and remain throughout.

> I could imagine a situation where the Supreme Court would say, certainly not the facts, that if you had 30 and all 30 are qualified and you filed the complaint and then you added five more, you had 35, and, then something happened and after you had 35 qualified, you fell below the 25. Maybe then they would count the added. But, that's not the facts here. So, I don't need to speculate as to what—what that— whether it was—that that would happen or not.

> All I'm saying is I'm granting the motion to add George and Julia Smith and the Bird applicant with the understanding that they cannot be used to constitute the minimum 25 that under [*Hous. Fin. & Dev. Corp. v. Takabuki*, 82 Hawai'i 172, 921 P.2d 92 (1996),] has to remain throughout.

> And, further, it doesn't make sense to me that the fact that this case even if I were wrong and you could add them as of today, if, as of yesterday, they weren't 25 then under *Takabuki* the authority has to terminate proceeding [sic].

On December 22, 2003, the Applicants filed a motion for reconsideration arguing, *inter alia:* (1) this court's opinion in *Takabuki* did not require that the City maintain the minimum number of applicants solely out of the group of lessees whose units were originally designated; (2) a liberal construction of ROH chapter 38 indicates that additional qualified applicants should be counted toward the required statutory minimum; and, (3) based on the language of Rules for Residential Condominium Cooperative and Planned Development Leasehold Conversion [hereinafter, DCS Rules] § 2–11(d)(1) (2000), Bird and the Smiths should be considered part of the original designation. The City joined in this motion. After a hearing on January 9, 2004, the circuit court ruled that "this Court, after reconsideration and upon further deliberation, adheres to its earlier ruling that Applicants Bird and Smith [c]annot [c]ount [t]oward the [r]equired [s]tatutory [m]inimum

[t]wenty-[f]ive [a]pplicants for [l]ease-to-[f]ee [c]onversion in [p]laintiff City and County of Honolulu's Amended Motion to Amend filed on October 31, 2003."

## 2. The City's Motion for Partial Summary Judgment

On October 3, 2003, the City moved for partial summary judgment, arguing, *inter alia:*

> The City has properly designated the Kahala Beach and determined that [the Applicants] have satisfied the qualifications for purchase of their respective leased fee interest pursuant to ROH Chapter 38 and the Amended Rules for Residential Condominium, Cooperative and Planned Development Leasehold Conversion ("DCS Rules"). Furthermore, under ROH § 38–2.4(c) and DCS Rules §§ 1–2, 1–5, 1–7, 1–8, 1–9, 2–3, 2–4, 2–5, 2–10, 2–13, and 2–15, the City has determined that the owner-occupant applicants have satisfied the qualifications for purchase of their respective percentage in the leased fee interest under ROH § 38–2.4 and DCS Rules § 2–4.

The Applicants joined in the City's motion.[1] After a hearing on October 22, 2003, the circuit court denied the City's motion, finding, *inter alia:*

> 2. The Court finds, upon the record presently before the Court, that the following Defendant Lessees are qualified under the requirements set forth in ROH Ch. 38:(1) Mary Ilma Costigan Anderson, Unit 432; (2) Steven and Heidi Berman, Unit 172; (3) Germaine H. Brennan, Unit 211; (4) Cedric and Patricia Choy, Unit 427; (5) Gerald H. Cutter, Unit 153; (6) Dan Devany, III, Unit 228; (7) Lola Gebauer, Unit 345; (8) Harrison C. and Marguerite Gonsalves, Unit 164; (9) Kathleen Hsiung, Unit 201; (10) George E. and Shirley M. Isaacs, Unit 272; (11) Edward B. Keyes, Jr., Unit 142; (12) Sakiko Kishimoto, Unit 445; (13) Barbara and Jennifer Lau, Unit 224; (14) Wallace and Marjorie Loo, Unit 250; (15) Margaret L. Montgomery, Unit 450; (16) Jean M. Morrell, Unit 451; (17) Dorothy and Ira Nagel, Unit 411; (18) Ruth G. Rand, Unit 305; (19) Marie Ryan, Unit 372; (20) James Shaw, Unit 204; (21) Mary H. Shelton, Unit 248; and (22) Norma Stillwell, Unit 366.

> 3. The Court finds that Mildred P. Ault (Unit 241) is not qualified, because she owned fee simple property suitable for residential purposes within the City and County of Honolulu that she quitclaimed for no consideration to relatives at the time she applied.

> 4. The Court finds that William C. Dixon, Jr., and Patricia Dixon (Unit 441) are not qualified, because they owned fee simple property suitable for residential purposes within the City and County of Honolulu that they quitclaimed for no consideration to relatives shortly before the time they applied.

> 5. The Court finds that there is a genuine issue of material fact as to whether Robert Dupire–Nelson and Darlene Dupire–Nelson, also known as Deborah Dupire–Nelson (Unit 410) meet the qualification requirements of ROH Chapter 38.

> 6. The Court finds that Daniel Y. and Juliet Lee (Unit 165) are not qualified, because they did not meet the one-year residency requirement under ROH § 38–1.2.

> 7. The Court finds that Derek Poag (Unit 470) is not qualified because he and his wife own fee simple residential property within the City and County of Honolulu.

> 8. The Court finds that Katherine R. Randall (Unit 148) is not qualified because she has rented out her unit and thus has not complied with the requirement under ROH § 38–1.2 that the applicant retain complete possessory control of the premises during the period pending legal proceedings to acquire the fee.

> 9. The Court finds that Charles Spalding (Unit 412) has sold his unit and therefore no longer meets the qualification requirements of Chapter 38.

---

**1.** It should be noted that the Trustees also filed motions for partial summary judgment on October 3, 2003. *See* section I.A.3., *infra.*

10. The Court finds that Jeannette J. Warren (Unit 453) is not qualified because she has rented out her unit and thus has not complied with the requirement under ROH § 38–1.2 that the applicant retain complete possessory control of the premises during the period pending legal proceedings to acquire the fee.

11. The Court finds that Henry Paul Weber (Unit 230) has sold his unit to Erik Sterling, and that Erik Sterling may substitute for Henry Paul Weber if he otherwise meets the qualification requirements of Chapter 38.

On December 22, 2003, the Applicants filed motions requesting that the circuit court reconsider its findings that Ault, the Dixons, the Lees, Poag, Randall, and Warren were not qualified to participate in the condemnation proceedings. The Applicants argued: (1) the Lees were qualified to participate in the condemnation proceedings based on DCS Rules § 2–14 (2000);[2] (2) the disqualification of Ault, the Dixons, and Poag was inconsistent with the language and purpose of ROH chapter 38; and (3) Randall and Warren were qualified to participate in the condemnation proceedings based on DCS Rules § 1–2 (2000), allowing exceptions to the residency requirement for serious illness, employment requirements, military obligations, and educational sabbatical. The City joined in these motions.

Following a hearing on January 9, 2004, the circuit court granted in part and denied in part the Applicants' motions for reconsideration. The motion was granted in part "in that [the court] reconsidered its earlier ruling[s]" on the City's motions for partial summary judgment. However, "after reconsideration and upon further deliberation," the court adhered to its earlier rulings disqualifying Ault, the Dixons, the Lees, Poag, Randall, and Warren.

## 3. The Trustees' October 3, 2003 Motions for Partial Summary Judgment

As previously noted, the Trustees filed three motions for partial summary judgment on October 3, 2003. The Trustees argued that they were entitled to summary judgment because: (1) the DCS Rules § 2–14, which allows the practice of "tacking," was inconsistent with ROH chapter 38; (2) lessees Henry Paul Weber and Charles Cooke Spalding were not qualified to participate in the condemnation proceedings; (3) the administrative rule allowing exceptions to the owner-occupant requirements was inconsistent with ROH chapter 38; and (4) there were fewer than 25 qualified applicants. The Trustees' three motions were heard on October 22, 2003, along with the City's motions for partial summary judgment.

### a. *the issue of "tacking"*

DCS Rules § 2–14 provides in full:

> Any person who acquires the lease of an applicant may be substituted for the withdrawing applicant, provided that the substituted applicant meets all the applicable requirements of Chapter 38, ROH and these rules, except the requirement that the substituted applicant be a resident of the condominium unit for a continuous and uninterrupted period of one year prior to the application. If the substitution occurs after the commencement of the condemnation action, it shall require the consent of the court. The director shall allow a substituted applicant a reasonable time to meet all the requirements for final approval. In the event there is no application for substitution within 60 days following a withdrawal, the director shall request the corporation counsel to dismiss the withdrawing applicant as a party to the condemnation action.

The Trustees argued that DCS Rules § 2–14 "allows an applicant who has satisfied the requirements to sell their position in the litigation to someone who would not otherwise meet the requirements of being an 'owner occupant.' " Thus, the Trustees claimed that DCS Rules § 2–14 directly conflicted with ROH chapter 38. The Trustees further explained:

> This rule, in effect, sanctions "tacking on" to the previous owner-occupant without having lived in the unit for the requisite

**2.** Cited in full, *infra*.

time period to become an owner-occupant under [ROH § 38–1.2]. Here, a number of the litigants are people who have "tacked on." They have not met the requirements of ROH § 38–1.2, and in some cases, they did not even live in Hawai'i at the time they applied.

The circuit court denied the Trustees' motion, orally ruling:

And when I look at the ordinance, it's silent on tacking. To that extent, it's not clear. It's ambiguous.

When I look at the rule, we're talking rule 2–14, the Court understands the rule to mean, because it says I think clearly by its plain words, and I'm quoting it as follows, any person who acquires the lease of an applicant may be substituted for the withdrawing applicant provided that the substituted applicant meets all the applicable requirements of chapter 38 ROH in these rules, except for the requirement that the substituted applicant be a resident of the condominium for a continuous and uninterrupted period of one year prior to the application.

So to me that means, obviously, that if the person who was the applicant was an owner-occupant and had resided there continuously for one year before the date of the application, and thereafter sells the condominium, then the person who can be substituted, who obviously couldn't possibly have lived there for one year before the date of substitution because they're just purchasing, gets the benefit of the time that the original applicant had been there.

That does not mean that a person can be an applicant and have lived there only two months and get the benefit of the 10 or 20 years that the person they bought it from was there, unless the person they bought it from was the original applicant for the applicable condemnation proceeding.

So what I am saying is that I do not think the rule is inconsistent with the ordinance, and that I do think the rule is narrow. And, therefore, you can only tack if you take after the person who lived there, for at least one year, had already made an application.

And as to the argument that it makes a substantive difference, the Court finds that the rule does not create a substantive difference. Because when you look at whether there were 25, it's 25 at the date of the filing of the condemnation proceeding, it's 25, I ought say, and the date of determination.

And so you look at 25, and if you—always still have to have 25. And if it happens that you make 25, and then one of those 25 later sells, the person to whom they sold gets the benefit of the original 25. But I don't see how that is a substantive difference to the landlord, because the landlord as the fee owner can always dispute that the original applicant wasn't there for the 12 year period.

So this motion is denied. But the Court will apply its interpretation to the undisputed facts later.

The court's written order was filed on December 5, 2003, stating in pertinent part that, "[a]s [DCS] Rules § 2–14 allows tacking if the substituted applicant substitutes in for a withdrawing original applicant for the applicable condemnation proceeding who has lived in the unit for at least one year, the Court finds that the rule is narrow and not inconsistent with ROH Chapter 38."

b. *lessees Weber and Spalding*

The Trustees moved for partial summary judgment against lessees Weber and Spalding and for the dismissal of their units from the condemnation proceeding because both applicants had sold their interests in The Kahala Beach. The circuit court granted the Trustees' motion as to the individual lessees and denied the motion as to the two units. The court essentially ruled that the named applicants were no longer part of the proceedings and could not be counted towards the minimum number of applicants necessary to proceed, but that their units could remain in the condemnation action subject to subsequent application of its ruling on the issue of tacking. The court's ruling was expressly made "without prejudice to hear[ing] the City's pending Motion to Amend the First Amended Complaint consistent with the Court's interpretation regarding tacking."

c. *exceptions to the owner-occupant requirements*

Both ROH § 38–1.2 and DCS Rules § 1–2 define "owner-occupant" for purposes of qualifying to participate in condemnation proceedings under ROH chapter 38. The definition contained in the administrative rule allows the Department of Housing and Community Development [hereinafter, the department], *see* ROH § 38–1.2; DCS Rules § 1–2 (2000), to consider exceptions to the occupancy requirements for participation in condemnation proceedings. The Trustees argued that the definition of "owner-occupant" in DCS Rules § 1–2 conflicted with ROH § 38–1.2.

The circuit court orally ruled:

Again, the Court is compelled wherever possible to reconcile the rule with the ordinance, and I believe that this part of the rule which deals with exceptions modifies the principal place of residence language of the ordinance.

And, as Mr. Smith has argued, I[d]o not believe, for an example, if you're in the hospital, surgery, or in a bad accident, or you're in the hospital and then you're transferred to Rehab Hospital of the Pacific, or something like that, that that would deprive you of claiming that your leasehold condominium is your principal place of residence.

Nor do I believe, as Mr. Smith has argued, that if you're assigned to Iraq that that means your principal place of business [sic] is in Iraq, or wherever else the military sends you.

. . . .

I do not think that those aforesaid exceptions contained in the rule modify the owner-part of the owner-occupant definition and do not in any way create an exception for or controvert the ordinance which makes it clear that you have to have complete possessory control and that you do not have complete possessory control of the premises if the individual rents, leases, or assigns the premises for any period of time to any other person in whose name legal title is not held.

And that is how I reconcile the rule with the statute. Therefore, a motion for partial summary judgment on the issue of ad hoc exceptions is denied in part, and to the extent that it was argued that the exceptions could be used to invalidate the ordinance and the rule's own language that you have to have complete possessory control and you do not if you rent, lease, or assign, it is granted.

The court's written order was filed on December 5, 2003 and stated in pertinent part:

1. The Department of Community Services may grant exceptions to Revised Ordinances of Honolulu (1990)("ROH") Section 38–1.2's occupancy requirement for serious illness, employment requirements, military obligations, and educational sabbatical, as provided under Rule 1–2 of the Rules for Residential Condominium, Cooperative and Planned Development Leasehold Conversion, as amended ("Rules"). The definitions of "owner-occupant" contained in Rule 1–2 and ROH § 38–1.2 can be reconciled. Rule 1–2's exception modifies the principal place of residence language of ROH § 38–1.2.

2. Applicants granted an exception to the occupancy requirement under Rule 1–2 of the Rules must still comply with the other qualification requirements of Revised Ordinances of Honolulu [ ] § 38–1.2, and may not rent, lease or assign their unit for any period of time to any other person in whose name legal title is not held.

### 4. The Trustees' December 1, 2003 Motion for Summary Judgment

On December 1, 2003, the Trustees moved for summary judgment, arguing that there were "qualified lessee applicants for less than 25 units."

On December 19, 2003, the Trustees filed a supplement to their motion for summary judgment. The Trustees (1) indicated that lessees Brennan and Kishimoto had withdrawn from the condemnation proceeding[3] and (2) argued that Sterling was not qualified to participate in the condemnation proceeding because his Kahala Beach unit was not

---

**3.** A stipulation to dismiss Kishimoto and Brennan was filed on December 31, 2003.

his principal place of residence and he was not a bona fide resident of the City and County of Honolulu, as required by ROH §§ 38–1.2 and 38–2.4, respectively. The Trustees submitted a copy of the assignment of lease from the unit's prior owner to Sterling, which indicated that it was executed by Sterling in California, and other documents in support of their contention that Sterling was a resident of Los Angeles.

The City argued that the record demonstrated that Sterling was a qualified lease applicant, citing, *inter alia*, Sterling's application to participate in the condemnation proceedings and supporting affidavit, which both indicate that Sterling was "a bona fide resident of the State of Hawai'i, whose principal residence is [Unit 230]." The City also argued that the documents submitted by the Trustees did not demonstrate that Sterling was not a resident of the City and County of Honolulu.

A hearing was held on January 9, 2004, during which counsel for the City argued, *inter alia*, that the timing of when applicants dropped out or were added to the condemnation proceedings affected the analysis of whether there were 25 applicants at the time the condemnation action was initiated and whether the minimum number was maintained throughout the proceedings. The court indicated that it deemed Brennan not to have been qualified from the beginning. At the conclusion of the hearing, the circuit court granted the Trustees' motion for summary judgment. The court's March 4, 2004 written order includes the following:

1. The Court finds that the following Defendant Lessees [(to wit: Ault, the Dixons, the Lees, Poag, Randall, Spalding, and Warren)] are not qualified for the reasons previously stated in the Court's Order Denying Plaintiff City and County of Honolulu's Motion for Partial Summary Judgment Filed on October 3, 2003, filed on December 5, 2003:

[(the order incorporates nearly verbatim Paragraphs 3, 4, 7, 8, 9, and 10 of the December 5, 2003 order, quoted *supra*)]

2. The Court finds that Defendant Lessee Erik Sterling (Unit 230) is not qualified because he did not live in his unit as

his principal place of residence continuously after he applied, and because he was not a bona fide resident of the City and County of Honolulu at the time he applied and afterward.

3. Defendant Lessee Germain Hope Brennan (Unit 211) has, by stipulation of the parties, withdrawn from the condemnation. For purposes of this motion, the Court must take as undisputed the following facts set forth in the Declaration of Paul S. Aoki, dated November 14, 2003, because Mrs. Brennan did not provide the discovery ordered by this Court within the time frame set by the Court in its Order Granting in Part and Denying in Part Defendant Kamhemeha Schools' Motion to Dismiss Defendant Germaine Hope Brennan as a Party in Civil No. 03–1–0361–02 Filed on October 29, 2003, filed on December 26, 2003:

. . . .

On the basis of these undisputed facts, the Court finds that Defendant Lessee Germaine Hope Brennan is not qualified because she has not lived in her unit as her principal residence continuously after she applied, and because she is not a bona fide resident of the City and County of Honolulu.

4. Defendant Lessee Sakiko Kishimoto (Unit 445) has, by stipulation of the parties, withdrawn from the condemnation. For purposes of this motion, the Court cannot find that Defendant Lessee Sakiko Kishimoto is qualified, because she did not provide the discovery ordered by this Court in its Order Denying Defendant Lessees' Motion for Protective Order Filed On August 21, 2003, filed on October 14, 2003.

5. The Court finds that from and after October 11, 2002, the date of designation, there have not continuously been qualified lessees for at least 25 units.

6. The Court holds, in light of *Housing Finance and Development Corporation v. Takabuki*, 82 Hawai'i 172, 921 P.2d 92 (1996), *Coon v. City and County of Honolulu*, 98 Hawai'i 233, 47 P.3d 348 (2002), and *City and County of Honolulu v. Ing*, 100 Hawai'i 182, 58 P.3d 1229 (2002), that

there must be qualified lessees for at least 25 units continuously throughout the legal proceedings to acquire the fee. If the class of qualified lessee applicants whose units have been designated falls below the statutory minimum number of 25 units, for whatever reason, the proceedings must be terminated.

7. Accordingly, the Court holds that this condemnation action must be terminated, and [the Trustees] is entitled to summary judgment.

### 5. The Trustee's Motion for an Award of Damages

On March 9, 2004, the Trustees filed a "Motion for an Order Determining Amount of Damages Incurred by Movants Pursuant to [HRS § 101–27]." The Trustees asserted that they were entitled to recover "$506,121.41 from the City in accordance with the Summary Judgment Order for the period through and including January 31, 2004, and additional amounts thereafter pursuant to a supplemental filing," pursuant to HRS § 101–27 (1993), quoted *infra.*

In opposition to the Trustess's motion for an award of damages, the City argued that, under HRS § 101–27, the Trustees were entitled only to reasonable fees and costs and that the Trustees failed to establish the reasonableness of their requested award. The Lessees joined in the City's opposition.

After a hearing on April 7, 2004, the circuit court granted in part and denied in part the Trustee's motion, ruling:

1. The Court partially denies the Motion and disallows as a matter of law the following cost and expense items requested by [the Trustees]:

(a) Expert witness fees in the amount of $65,195.70.

(b) Computer research fees in the amount of $849.85.

(c) Hearing exhibits in the amount of $548.43.

2. The Court partially grants the Motion as it applies to the remaining amounts requested by [the Trustees], and rules that [the Trustees] shall be entitled to reimbursement of the following:

(a) Attorneys' fees and general excise tax in the amount of $440,069.06.

(b) Costs and expenses in the amount of $19,030.49.

### 6. Final Judgment

Final judgment in favor of the Trustees was filed on April 28, 2004. The Applicants and the City timely appealed. The Trustees filed a timely notice of cross-appeal.

### B. *The Declaratory Judgment Action*

On December 18, 2002, the Trustees filed a complaint in first circuit court against the City and the department. The Trustees sought the following relief: (1) an injunction prohibiting the City from exercising its power of eminent domain in regard to The Kahala Beach; (2) entry of judgment declaring that the City's efforts to condemn The Kahala Beach were unconstitutional and illegal; (3) entry of judgment declaring that ROH chapter 38 is illegal and unconstitutional as applied to The Kahala Beach; (4) reimbursement for actual expenses incurred by the Trustees as a result of the City's designation of The Kahala Beach for condemnation; (5) an award of damages in an amount proven at trial; (6) an award of attorneys' fees and costs; and (7) any further relief deemed just and equitable by the court. On June 4, 2003 the declaratory judgment action was consolidated with the condemnation action.

On January 22, 2004, following the award of summary judgment in favor of the Trustees in the condemnation action, the City moved to dismiss the Trustees' claims in the declaratory judgment action as moot or, in the alternative for judgment on the pleadings in favor of the City. The Trustees did not expressly oppose the City's motion, but filed a "Memorandum in Response," incorporating by reference the evidence submitted and arguments made in prior motions filed in the condemnation case.

During a hearing on January 30, 2004, the court accepted a stipulation by the parties that, for the purpose of the consolidated actions, the following was deemed proved:

1. The transcript of excerpts of the Honolulu Council regular Council meeting

held on December 4, 2002, attached as Exhibit "3" to [the Trustees'] Motion for Partial Summary Judgment on Counts I–III of [the Trustees'] Complaint and supporting papers, filed herein on October 3, 2003, is an accurate transcription of what was said.

2. The newspaper article attached as Exhibit "5" to [the Trustees'] Motion to Compel Discovery of "Privileged" Communications from Plaintiff City and County of Honolulu and Defendant Lessees, filed herein on September 18, 2003, accurately reflects what Corporation Counsel David Arakawa, Esq. said to the press.

3. As Corporation Counsel, David Arakawa, Esq. had authority to make the statements to the press.

The court subsequently granted the City's motion. A written order was filed on February 10, 2004. A final judgment indicating that all claims and prayers for relief in the declaratory judgment action had been resolved or dismissed as moot was filed on April 28, 2004. The Trustees timely appealed.

## II. *STANDARDS OF REVIEW*

### A. *Award of Summary Judgment*

■ "We review the circuit court's grant or denial of summary judgment *de novo*." *Simmons v. Puu,* 105 Hawai'i 112, 117, 94 P.3d 667, 672 (2004) (quoting *Hawai'i Cmty. Fed. Credit Union v. Keka,* 94 Hawai'i 213, 221, 11 P.3d 1, 9 (2000)).

### B. *Awards of Fees and Costs*

■ "This court reviews the circuit court's denial and granting of attorney's fees under the abuse of discretion standard." *Price v. AIG Hawai'i Ins. Co., Inc.,* 107 Hawai'i 106, 110, 111 P.3d 1, 5 (2005) (citation omitted).

### C. *Statutory Interpretation*

■ "We review the circuit court's interpretation of a statute *de novo*." *City and County of Honolulu v. Ing,* 100 Hawai'i 182, 189, 58 P.3d 1229, 1236 (2002) (citation omitted).

## III. *DISCUSSION*

### A. *The Condemnation Action*

Appellants argue that the circuit court erred in ruling that there had not continuously been qualified lessees for at least 25 units to support the condemnation action because: (1) genuine issues of material fact existed regarding Sterling's principal place of residence; (2) Ault and the Dixons should not have been disqualified based on their transfer of fee simple property prior to applying for condemnation under ROH chapter 38; (3) Poag's fee simple property ownership did not disqualify him because the property in question was not habitable or suitable for residential purposes; (4) ROH chapter 38 does not require that the minimum number of qualified applicants come from those originally designated; (5) the court erroneously applied DCS Rules § 2–14, which allows "tacking"; and (6) the court erroneously applied the exceptions to the occupancy requirements articulated in DCS Rules § 1–2. The City additionally claims that the circuit court erred in awarding the Trustees' requested attorneys' fees.

In their cross-appeal, the Trustees contend that the circuit court erred in determining that: (1) the definition of "owner-occupant" contained in DCS Rules § 1–2 could be reconciled with the definition of "owner-occupant" contained in ROH § 38–1.2; (2) the City may allow subsequent lessees to "tack on" to the previous applicant's time of residency for purposes of fulfilling the twelve-month residency requirement under ROH § 38–1.2; (3) units 230 (formerly Weber's) and 412 (formerly Spalding's) remained subject to condemnation despite the fact that the former applicants had sold their units and were no longer qualified to participate in condemnation proceedings; (4) the City could amend its first amended complaint; and (5) the Trustees could not recover expert witness fees.

### 1. Ault and the Dixons—Units 241 and 441

■ The circuit court ruled that applicants Ault and the Dixons were not qualified because they owned fee simple property suit-

able for residential purposes within the City and County of Honolulu that was quitclaimed for no consideration to relatives shortly before or at the time they applied to participate in the condemnation proceedings. The circuit court explained that it did not believe Ault and the Dixons were qualified because the property that they had quitclaimed in order to qualify for the condemnation proceedings could be quitclaimed back to them.

Appellants contend that the circuit court's ruling that Ault and the Dixons were not qualified is not supported by the plain language of ROH § 38–2.4. The Trustees argue that the circuit court was correct because the transactions by Ault and the Dixons were similar to the creation of "false poverty" to become eligible for government assistance programs or fraudulent conveyances.

The clear and unambiguous language of ROH § 38–2.4 provides that applicants are not eligible to participate in condemnation proceedings under ROH chapter 38 unless they "[d]o not own property in fee simple lands suitable for residential purposes within the City and County of Honolulu or have pending . . . an unrefused application to lease or purchase residential real property for dwelling unit purposes." In the instant case, it is undisputed that, at the time they applied and throughout the condemnation proceedings, neither Ault nor the Dixons owned fee simple property suitable for residential purposes within the City and County of Honolulu or had a pending, unrefused application to lease or purchase residential real property for dwelling unit purposes. Based on the plain language of the ordinance, we hold that the circuit court erred in ruling that Ault and the Dixons were not qualified to participate in condemnation proceedings under ROH chapter 38.

### 2. Poag

■ Appellants contend that the circuit court erred in ruling that lessee Poag (Unit 470) was not qualified to participate in the condemnation action because he and his wife owned fee simple property within the City and County of Honolulu. Appellants argue (1) Poag owned the property to secure financing as part of his business of buying,

renovating, and selling residential and commercial property and (2) the property was not habitable during the time Poag owned it due to plumbing, electrical, structural, and security deficiencies. Thus, Appellants appear to contend that the circuit court should not have ruled that Poag was not qualified because of (1) the reason he owned the property in question and (2) the state of the structure atop such property.

ROH § 38–2.4 provides in pertinent part:

(a) No sale of any condominium land within a development shall be made unless the lessees:

. . .

(4) *Do not own property in fee simple lands suitable for residential purposes within the City and County of Honolulu* or having pending before the state housing finance and development corporation, or the city department of housing and community development an unrefused application to lease or purchase *residential real property for dwelling unit purposes.* A person is deemed to own lands, for the purpose of this paragraph, if the person, the person's spouse, or both the person and the person's spouse (unless separated and living apart under a decree of a court of competent jurisdiction) owns lands, including any interest, in a land trust in the City and County of Honolulu;

Based on the language "property in fee simple lands suitable for residential purposes" and "residential real property for dwelling unit purposes," the relevant inquiry under ROH § 38–2.4 centers around the character of the land itself—whether the property can be used for residential purposes or dwelling unit purposes. Under the plain language of the ordinance, the *habitability* of any structures atop land suitable for residential purposes is not relevant.

In the instant case, Poag admitted during his deposition that the fee simple land he owned at 1248 Luna Place [hereinafter, the Makiki Property] was residential property, and it is undisputed that the Makiki Property is within the City and County of Honolulu.

Poag also explained that the following work was done on the Makiki Property:

> We gutted the entire residence. By that I mean we tore out all the drywall, tore off the roof, tore out all the plumbing, reconfigured many of the interior walls, put in all new plumbing, all new drywall, all new roofing, added 1,500 square feet, including a detached garage and a guest cottage above the garage, resurfaced all the floors, put in granite and marble throughout, all new appliances, re-landscaped the entire project site. It was an extensive renovation.

Poag's statements demonstrate that the Makiki Property was residential property and that the land had been used as such. Thus, the record supports the circuit court's determination that Poag owned fee simple residential property within the City and County of Honolulu.

Appellants argue that Poag should not have been disqualified because he owned the property for business purposes. However, the plain language of ROH § 38–2.4 is both unqualified and unambiguous: "No sale of condominium land within a development shall be made unless the lessees . . . [d]o not own property in fee simple lands suitable for residential purposes." There being no ambiguity in the ordinance, this court is not at liberty to look beyond its plain language. *See Ing*, 100 Hawai'i at 189–90, 58 P.3d at 1236–37 (citations omitted). Therefore, we hold that the circuit court did not err in ruling that Poag was not qualified to participate in condemnation proceedings under ROH chapter 38.

### 3. The Issue of Tacking

■ Appellants and Trustees contend that the circuit court erred in its rulings regarding DCS Rules § 2–14, which allows a subsequent applicant to "tack on" to the time a withdrawing applicant resided in the unit to satisfy the one-year residency requirement for participation in condemnation proceedings. Appellants contend that the circuit court erred in finding that "Daniel and Juliet Lee (Unit 165) are not qualified because they did not meet the one-year residency requirement under [ROH] § 38–1.2" The Trustees

contend that the circuit court erred in ruling that DCS Rules § 2–14 "is narrow and not inconsistent with ROH chapter 38."

The Trustees contend that DCS Rules § 2–14 conflicts with ROH chapter 38 because the administrative rule "allows an applicant who has satisfied the requirements to sell their position in the litigation to someone who would not otherwise meet the requirements of being an 'owner-occupant.' " Appellants argue that the definition of "lessee" in ROH chapter 38 specifically contemplates the situation where an applicant sells or otherwise conveys his or her interest to another person.

■ "[W]hen interpreting municipal ordinances, we apply the same rules of construction that we apply to statutes." *Coon v. City and County of Honolulu*, 98 Hawai'i 233, 245, 47 P.3d 348, 360 (2002) (quoting *Weinberg v. City and County of Honolulu*, 82 Hawai'i 317, 322, 922 P.2d 371, 377 (1996)). "While an administrative agency's interpretation of the ordinance that it is responsible for implementing is normally accorded great weight, no deference is required when the agency's interpretation conflicts with or contradicts the manifest purpose of the ordinance it seeks to implement." *Id.* at 251, 47 P.3d at 366 (citations omitted). Additionally, we have noted that

> strict construction merely precludes "doubtful inferences" and mandates that the grant of the power of eminent domain be found in the ordinance, "either expressly or by necessary implication." The express purpose of the ordinance promulgated by the City Council must, in turn, be effected to the fullest extent possible through interpretation of its language and the resolution of ambiguities in accordance with the "liberal construction" rule.

*Id.* at 247 n. 18, 47 P.3d at 362 n. 18.

ROH § 38–1.2 defines a lessee as "any person to whom land is leased or subleased, *including the person's heirs, successors, legal representatives, and assigns* and who is the owner-occupant of the residential condominium unit, residential cooperative housing unit or residential planned development unit." (Emphasis added.) The definition of "lessee"

refers to an "owner-occupant," which is separately defined in ROH § 38–1.2. However, the definition of "lessee" is ambiguous as to whether the owner-occupant requirement applies to only "any person to whom land is leased or subleased" or to "the heirs, successors, legal representatives, and assigns" as well. Appellants argue that the former reading resolves the ambiguity in the ordinance in accordance with the rule of liberal construction and gives greater effect to the intent of the legislature. Assuming but not deciding that the owner-occupant requirement applies only to the "persons to whom land is leased or subleased" and not "the person's heirs, successors, legal representatives, and assigns, it does not resolve the question of whether DCS Rules § 2–14 conflicts with ROH chapter 38.

Although ROH § 38–1.2 defines various terms used in ROH chapter 38 including "lessee," the eligibility requirements for participation in condemnation proceedings are set forth in ROH § 38–2.4, which provides, *inter alia*, that "[n]o sale of any condominium land within a development shall be made unless *the lessees* ... [a]re at least 18 years of age *and are owner-occupants of their condominium units*[.]" (Emphases added.) This court has noted that " 'our rules of statutory construction requires us to reject an interpretation of a statute or an ordinance that renders any part of the statutory language a nullity.' " *Coon*, 98 Hawai'i at 250, 47 P.3d at 365 (citations and brackets omitted). Thus, although the definition of "lessee" in ROH § 38–1.2 may be interpreted to include individuals who do not themselves meet the owner-occupant requirements, the plain language of ROH § 38–2.4 separately requires that lessees be owner-occupants in order to participate in condemnation proceedings under ROH chapter 38.

An owner-occupant is:

> any individual in whose name sole or joint legal title is held in a residential condominium unit, residential cooperative apartment unit or residential planned development unit which, simultaneous to the individual's ownership, *serves as the individual's principal place of residence for a period of not less than one year immediately prior to application for conversion, as well as during the period pending legal proceedings to acquire the fee;* provided, that the individual shall retain complete possessory control of the premises of the residential unit during these periods. An individual shall not be deemed to have complete possessory control of the premises if the individual rents, leases, or assigns the premises for any period of time to any other person in whose name legal title is not held. Proof of residency and possessory control shall be as established by rules adopted by the department.

ROH § 38–1.2 (emphasis added). Read together, ROH §§ 38–2.4 and 38–1.2 indicate that no sale of condominium land within a development shall be made unless the lessee's condominium unit, simultaneous with his or her ownership of it, serves as the individual's principal place of residence for a period of at least one year immediately prior to applying to participate in condemnation proceedings under ROH chapter 38.

DCS Rules § 2–14 provides in pertinent part:

> Any person who acquires the lease of an applicant may be substituted for the withdrawing applicant, provided that the substituted applicant meets all the applicable requirements of Chapter 38, ROH and these rules, except the requirement that the substituted applicant be a resident of the condominium for a continuous and uninterrupted period of one year prior to the application.

The administrative rule allows the sale of condominium property under ROH chapter 38 to a lessee who does not satisfy the requirement that the unit serve as the lessee's principal place of residence of one year immediately prior to application for conversion, as well as during the period pending legal proceedings to acquire the fee. Thus, on its face, the administrative rule appears to conflict with the plain language of ROH § 38–2.4.

ROH § 38–1.2 provides that "proof of residency and possessory control shall be as established by rules adopted by the department." Based on this language, the Appli-

cants argue that DCS Rules § 2–14 constitutes a special rule for proof of residency and possessory control that establishes an otherwise qualified applicant is deemed to have constructively met the twelve-month residency requirement by substituting for a withdrawing applicant who was previously qualified. However, the language of DCS Rules § 2–14 does not support the Applicants' argument. This court has previously noted that DCS Rules § 1–9 articulates the rules governing the manner in which applicants must prove their residency and possessory control. *Ing*, 100 Hawai'i at 194, 58 P.3d at 1241. DCS Rules § 1–9 (2000) provides:

> *Burden of proof; oaths; affidavits.* The party having the burden of proof of any fact or event shall make such proof by competent and credible evidence and testimony acceptable and satisfactory to the director or his designated agent. Evidence at any hearing may be required to be given under oath or by sworn written material. An application may be required to be affirmed under oath. False oaths and affidavits shall constitute perjury and a violation of sec.710–1060, HRS.

DCS Rules § 1–9 clearly establishes the type and amount of evidence necessary to satisfy the applicable burden of proof. In contrast, DCS Rules § 2–14 provides that a person may be substituted for a withdrawing applicant need not "meet" the requirement "that the substituted applicant be a resident of the condominium for a continuous and uninterrupted period of one year prior to the application." Thus, rather than establishing the type and amount of evidence necessary for a substituted applicant to satisfy his or her burden of demonstrating residency and possessory control, DCS Rules § 2–14 states that no evidence of the aforementioned residency requirement is necessary. The rule is plainly inconsistent with ROH § 38–2.4. Therefore, we hold that the circuit court erred in holding that DCS Rules § 2–14 "is narrow and not inconsistent with ROH chapter 38." Because (1) DCS Rules § 2–14 is inconsistent with and contradicts the manifest purpose of ROH § 38–2.4 and is, therefore, held to be invalid and (2) it is undisputed that the Lees, absent the invalid rule allowing "tacking," did not satisfy the re-

quirements of ROH § 38–2.4, we also hold that the circuit court did not err in ruling that the Lees were not qualified.

### 4. Sterling

Appellants contend that the circuit court erred in finding that Sterling was "not qualified because he did not live in his unit as his principal residence continuously after he applied, and because he was not a bona fide resident of the City and County of Honolulu at the time he applied and afterward." Specifically, Appellants argue that Sterling's application to participate in lease to fee conversion and his supporting affidavit, considered in the light most favorable to the nonmoving party, demonstrates that there was a genuine issue of material fact regarding whether Sterling was qualified to participate in the proceedings.

This court has noted that

> summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. The evidence must be viewed in the light most favorable to the non-moving party. In other words, we must view all of the evidence and the inferences drawn therefrom in the light most favorable to the party opposing the motion

*Simmons*, 105 Hawai'i at 117–18, 94 P.3d at 672–73 (quoting *Kahale v. City and County of Honolulu*, 104 Hawai'i 341, 344, 90 P.3d 233, 236 (2004)).

In his application dated April 21, 2003, Sterling indicated that he had occupied Unit 230 for three days and that he is a bona fide resident of the City and County of Honolulu. In his affidavit in support of his application, Sterling states, under penalty of perjury that he is a bona fide resident of the City and County of Honolulu. Thus, although the Trustees may have presented evidence indi-

cating that Sterling did not satisfy the residency requirements, the City clearly presented admissible evidence to the contrary. Given the contradictory evidence adduced by the parties, the circuit court erred in ruling that there were no genuine issues of material fact as to whether Sterling was a bona fide resident of the City and County of Honolulu. However, it is undisputed that Sterling was *not* a resident of his condominium unit for a continuous and uninterrupted period of one year prior to his application and that the department deemed Sterling qualified based on DCS Rules § 2–14. Therefore, based on our holding that DCS Rules § 2–14 is invalid, we also hold that Sterling was not qualified to participate in condemnation proceedings under ROH chapter 38. Accordingly, we hold that the circuit court correctly ruled that Sterling was not qualified, albeit for different reasons. *See Agsalud v. Lee,* 66 Haw. 425, 430, 664 P.2d 734, 738 (1983) ("[w]here the decision below is correct it must be affirmed by the appellate court though the lower tribunal gave the wrong reason for its action" (brackets in original) (citations and internal quotation marks omitted)).

### 5. Exceptions to the Requirement that Applicants Retain Complete Possessory Control Over Their Condominium Units

Appellants and Trustees claim that the circuit court erred in its interpretation of DCS Rules § 1–2. The circuit court concluded that the "exceptions to the occupancy requirement based only on serious illness, employment requirements, military obligations, and educational sabbatical" listed in DCS Rules § 1–2 applied to the requirement in ROH § 38–1.2 that the condominium unit serve "as the [applicant's] principal place of residence for a period of not less than one year immediately prior to application for conversion, as well as during the period pending legal proceedings to acquire the fee." However, the court also ruled that applicants Randall and Warren were not qualified to participate in the condemnation proceedings because they had rented out their units and, therefore, did not comply with the requirement that applicants retain possessory con-

trol of the premises during the period pending legal proceedings to acquire the fee. On appeal, it is undisputed that Randall and Warren rented out their units during the year immediately prior to application for conversion or during the period pending legal proceedings to acquire the fee.

As noted *supra,* ROH § 38–2.4 requires lessees to be owner-occupants of their condominium units in order to be eligible for condemnation proceedings under ROH chapter 38. As previously stated, ROH § 38–1.2 defines "owner-occupant" as

> any individual in whose name sole or joint legal title is held in a residential condominium unit, residential cooperative apartment unit or residential planned development unit which, simultaneous to the individual's ownership, serves as the individual's principal place of residence for a period of not less than one year immediately prior to application for conversion, as well as during the period pending legal proceedings to acquire the fee; provided[ ] that the individual shall retain complete possessory control of the premises of the residential unit during these periods. *An individual shall not be deemed to have complete possessory control of the premises if the individual rents, leases, or assigns the premises for any period of time to any other person in whose name legal title is not held.* Proof of residency and possessory control shall be as established by rules adopted by the department.

(Emphasis added.) DCS Rules § 1–2 defines "owner-occupant" as

> any individual in whose name sole or joint legal or equitable title is held in a residential condominium unit or planned development apartment or home which serves concurrently with such ownership as the individual's principal place of residence for a continuous and uninterrupted period of not less than one year immediately preceding an application for conversion, as well as during the legal proceedings to acquire the fee simple title. An owner-occupant must retain complete possessory control of the condominium unit or planned development apartment or home throughout these periods and shall not be deemed to have

complete possessory control if the condominium unit or planned development apartment or home is rented, leased or assigned for any period of time to any other person who is not a legal owner, or an equitable owner under an Agreement of Sale, of the same condominium. *The department may consider exceptions to the occupancy requirement based only on serious illness, employment requirements, military obligations, and educational sabbatical.*

(Emphasis added.)

a. *the Trustees' argument*

■ The Trustees argue that the circuit court erred in ruling that DCS Rules § 1–2 and ROH § 38–1.2 can be reconciled because the administrative rule expands the definition of "owner-occupant" beyond the plain language of the ordinance. As noted *supra,* an administrative agency's interpretation of the ordinance that it is responsible for implementing is normally accorded great weight. *Coon,* 98 Hawai'i at 251, 47 P.3d at 366 (citations omitted). Additionally, although the application of strict scrutiny "precludes doubtful inferences and mandates that the grant of the power of eminent domain be found in the ordinance, either expressly or by necessary implication[,]" "[t]he express purpose of the ordinance promulgated by the City Council must, in turn, be effected to the fullest extent possible through interpretation of its language and the resolution of ambiguities in accordance with the liberal construction rule." *Id.* at 247 n. 18, 47 P.3d at 362 n. 18 (internal quotation marks omitted).

ROH § 38–1.2 requires, *inter alia,* that the subject condominium unit serve as the applicant's "principal place of residence" and that the applicant retain "complete possessory control" of the premises. DCS Rules § 1–2 allows the department to consider exceptions to the "occupancy requirement." Inasmuch as neither ROH chapter 38 nor the DCS Rules establish an "occupancy requirement," it is unclear whether, on their face, the definitions of "owner-occupant" in DCS Rules § 1–2 and ROH § 38–1.2 are inconsistent.

Because ROH chapter 38 clearly establishes that applicants must meet the residency and possessory control requirements articulated in ROH § 38–1.2, the Trustees are correct that DCS Rules § 1–2 cannot be interpreted to create exceptions to these requirements. *See Coon,* 98 Hawai'i at 251, 47 P.3d at 366. However, ROH § 38–1.2 clearly expresses the City Council's intent to allow the department to establish rules as to how applicants prove that their unit served as their principal place of residence and that they retained complete possessory control of their units.[4] Thus, the department may consider occupancy as a factor in determining whether the condominium unit serves as the applicant's principal place of residence. Additionally, as the circuit court noted, it is reasonable for the department to establish rules for proving residency and possessory control that accommodate for situations where an applicant does not occupy his or her unit for a period of time, such as inpatient care in a medical facility or military deployment. Therefore, in giving the effect to the City Council's intent to allow the department to establish rules for proof of residency and possessory control to the fullest extent possible, we hold that the language of DCS Rules § 1–2 allowing the department to consider exceptions to the "occupancy requirement" for serious illness, employment requirements, military obligations, and educational sabbatical is consistent with ROH § 38–1.2, which allows the department to establish rules of proof of residency and possessory control. Accordingly, we hold that the circuit court did not err in ruling that the definitions of "owner-occupant" contained in ROH § 38–1.2 and DCS Rules § 1–2 may be reconciled.

b. *the Appellants' arguments*

■ Appellants argue that the circuit court erred in excluding applicants Warren and Randall because the exceptions articulated in DCS Rules § 1–2 apply to the requirement that applicants retain "complete possessory control" of their premises. ROH § 38–1.2 states that an applicant who leases his or

4. This court has noted that the terms "principal place of residence" and "possessory control" are

not defined in ROH chapter 38. *See Ing,* 100 Hawai'i at 195, 58 P.3d at 1242.

her premises during the relevant periods "shall not be deemed to have complete possessory control." "The term 'shall' is ordinarily used in a mandatory sense." *Taomae v. Lingle,* 108 Hawai'i 245, 251, 118 P.3d 1188, 1194 (2005) (citations omitted). Thus, the plain language of ROH § 38–1.2 mandates that an individual *cannot* be deemed to have complete possessory control of the premises if they rent their unit for any period of time to a person in whose name legal title is not held. Applicants who do not maintain complete possessory control of the premises do not meet the definition of an owner-occupant under ROH § 38–1.2 and, based on ROH § 38–2.4, are not eligible to participate in condemnation proceedings under ROH chapter 38. Inasmuch as an administrative rule cannot contradict or conflict with the ordinance it seeks to implement, *see Coon,* 98 Hawai'i at 251, 47 P.3d at 366 (citations omitted), DCS Rules § 1–2 cannot be interpreted to allow an individual to rent out his or her unit and still meet the requirement of retaining complete possessory control of the units. Therefore, we hold that the circuit court did not err in concluding that the exceptions in DCS Rules § 1–2 cannot be interpreted to invalidate the mandate in ROH § 38–1.2 that any applicant who rents his or her unit during the relevant periods of time cannot be deemed an "owner-occupant." Accordingly, we also hold that the circuit court did not err in ruling that applicants Randall and Warren were not qualified to participate in condemnation proceedings under ROH chapter 38.

### 6. Bird and the Smiths

Both the City and the Applicants contend that the circuit court erred in ruling that applicants Bird and the Smiths could not be counted to satisfy the statutory minimum number of applicants required to initiate a condemnation proceeding. The Applicants argue that the

> circuit court erred when it interpreted . . . [*Takabuki,* 82 Hawai'i at 183, 921 P.2d at 103] to require that the statutory minimum number of applicants must come only from the group of lessees *originally* designated, when it prohibited the counting of those fully qualified applicants added by amend-

ment, and when it thereby dismissed the subject condemnation action when it erroneously determined that the number of *originally* designated applicants fell below 25.

(Capitals in original omitted.) Similarly, the City argues that the circuit court erred because "ROH chapter 38 does not require that the statutory minimum number of applicants be maintained only from the [applicants] originally designated." (Capitals in original omitted.) Additionally, both the Applicants and the City argue that the circuit court's amendment of the complaint to include Bird and the Smiths relates back to the date of the original complaint.

Contrary to Appellants arguments, the circuit court did not hold that the required minimum number of units must be maintained from the group of applicants originally designated. Rather, the court focused on whether the minimum number of qualified units were designated at the time condemnation proceedings were initiated. During the hearing on the Applicants' motion for reconsideration, the court explained:

> Well, the point that I think we are, is to determine whether, in fact, [the original designation met the numerosity requirement when first designated]. And what I'm saying is, you make that determination without counting [Bird and Smith], who are later added. *So you have to look at the first designation, and whether there were 25.*
>
> *And merely because later somebody is added doesn't mean that you can use those who were added to cure any lack of 25 at the original time of designation.* That's what I meant for you to understand, and not that I was saying, because I agree it's an open question, say there were 25 in the beginning, and say thereafter [two lessees] are added, and say thereafter, three more are added, so there are 30.
>
> Then after that, some other people drop out or pass away or whatever. If you still have 25, I could imagine that that would not require the end of it, because at all times there were 25. But what I'm saying is, you can't use [Bird and the Smiths] to

cure any lack of 25 at the time, and the litigation that's challenging whether those 25 were qualified under the law has to be played out.

And if [Bird and the Smiths] weren't in yet and weren't coming in until after the full litigation on the 25, then it would fall below. So to the extent that I didn't explain that as well as I hope I have now, that was my rationale.

(Emphasis added.) Thus, the record demonstrates that the circuit court clearly did not rule that the statutory minimum number of applicants must be maintained only from those originally designated.

 In the instant case, the circuit court initially ruled that 22 applicants, including Brennan, were qualified. The court's unchallenged ruling that Brennan was deemed not to have been qualified from the beginning, and our conclusion that the circuit court erred in ruling that Ault and Dixon were not qualified results in a total of 23 applicants deemed qualified at the time condemnation proceedings were initiated. Taking into consideration the circuit court's ruling that genuine issues of material fact existed as to the Dupire–Nelsons, the City initiated condemnation proceedings based on a designation that included, at most, 24 qualified applicants. This court has ruled that the failure to receive a sufficient number of qualified applications prior to initiating ROH chapter 38 proceedings results in an invalid, void, and unenforceable designation because the department exceeded its authority pursuant to ROH § 38–2.2. *See Ing,* 100 Hawai'i at 193, 58 P.3d at 1240 (citing *Coon,* 98 Hawai'i at 251, 47 P.3d at 366). The subsequent amendments could not cure proceedings initiated based on a void and invalid designation. Additionally, we note that Hawai'i Rules of Civil Procedure (HRCP) Rule 15(c)

(2000) [5] offers no relief because " 'the rationale of the relation back rule 15(c) is to ameliorate the effect of the statute of limitations.' Here, there is no limitation of action problem. Thus, Rule 15(c) has no applicability." *Hanalei, BRC Inc. v. Porter,* 7 Haw. App. 304, 309–10, 760 P.2d 676, 680 (1988) (citation, brackets, and footnote omitted); *see also Chin Kee v. Kaeleku Sugar Co.,* 30 Haw. 17, 22 (1927); *Farber v. Wards Co., Inc.,* 825 F.2d 684, 689 (2d Cir.1987) ("Rule 15(c) governs the 'relation back' of amended pleadings only for the purpose of the statute of limitations, which is simply not implicated in this case."); *Doe v. O'Bannon,* 91 F.R.D. 442, 447 (E.D.Pa.1981) (" 'relation back' only exists for the purpose of ameliorating the effect of statutory bars to relief and not for the purpose of artificially assisting plaintiffs to fulfill constitutional prerequisites, such as standing" (citation omitted)).

### 7. Fees and Costs

On appeal, the City contends that the circuit court erred in awarding the Trustees' requested attorneys' fees because the request included work that was "duplicative, unproductive, excessive, or unnecessary." The Trustees claim that the circuit court erred in denying their requested expert witness fees, arguing that such an award was authorized under HRS § 101–27.

 "Ordinarily, attorneys' fees cannot be awarded as damages or costs unless so provided by statute, stipulation, or agreement." *Shanghai Inv. Co., Inc. v. Alteka Co., Ltd.,* 92 Hawai'i 482, 501, 993 P.2d 516, 535 (2000) (citations and internal quotation marks omitted), *overruled on other grounds by Blair v. Ing,* 96 Hawai'i 327, 31 P.3d 184 (2001). HRS § 101–27 provides:

> (3) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

5. HRCP Rule 15(c) provides:
> (c) **Relation Back of Amendments.** An amendment of a pleading relates back to the date of the original pleading when
> (1) relation back is permitted by the law that provides the statute of limitations applicable to the action, or
> (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, or

Whenever any proceedings instituted under this part are abandoned or discontinued before reaching a final judgment, or if, for any cause, the property concerned is not finally taken for public use, *a defendant who would have been entitled to compensation or damages had the property been finally taken, shall be entitled, in such proceedings, to recover from the plaintiff all such damage as may have been sustained by the defendant by reason of the bringing of the proceedings and the possession by the plaintiff of the property concerned if the possession has been awarded including the defendant's costs of court, a reasonable amount to cover attorney's fees paid by the defendant in connection therewith, and other reasonable expenses;* and the possession of the property concerned shall be restored to the defendant entitled thereto. Issues of fact arising in connection with any claim for such damage shall be tried by the court without a jury unless a trial by jury is demanded by either party, pursuant to the rules of court, within ten days from the date of the entry of an order or judgment allowing the discontinuance of the proceedings, or dismissing the proceedings or denying the right of the plaintiff to take the property concerned for public use. In the event judgment is entered in favor of the defendant and against the plaintiff, any moneys which have been paid, and any additional security which has been furnished, by the plaintiff to the clerk of the court under sections 101–28 and 101–29, shall be applied or enforced toward the satisfaction of the judgment. In the case of the State or a county, if the moneys so paid to the clerk of the court are insufficient, then the balance of such judgment shall be paid from any moneys available or appropriated for the acquisition of the property concerned, or if that is insufficient then the same shall be paid from the general fund of the State or county, as the case may be.

(Emphasis added.) Additionally, ROH § 38–5.2 provides in pertinent part:

If the leased fee interest is not acquired or eminent domain proceedings are not instituted within the 12 month period, the city shall reimburse the fee owner, the lessor, and the legal and equitable owners of land so designated for actual out-of-pocket expenses they incurred as appraisal, survey, and attorneys fees as a result of the designation.

▮▮▮▮ Generally, judges must "specify the grounds for awards of attorneys' fees and the amounts awarded with respect to each ground. Without such an explanation, we must vacate and remand awards for redetermination and/or clarification." *Price,* 107 Hawai'i at 113, 111 P.3d at 8 (citations omitted). In the instant case, the Trustees focused primarily on HRS § 101–27. However, the Trustees also quoted the pertinent language from ROH § 38–5.2 in their memorandum in support of an award for fees. Additionally, Appellants argued both that expert witness fees could not be awarded under HRS § 101–27 and that the requested amounts were unreasonable. Although the court's order notes that the Trustees' motion was entitled "Defendants James Douglas Keauhou Ing, Constance Hee Lau, Charles Nainoa Thompson, Diane Joyce Plotts and Robert Kalani Uichi Kihune, Trustees under the Will and of the Estate of Bernice Pauahi Bishop, Deceased's Motion for an Order Determining Amount of Damages Incurred by Movants Pursuant to Haw.Rev.Stat. [§ ]101–27," it does not state the statutory basis for its award of fees and costs, and does not indicate whether its denial of the Trustees' requested expert witness fees was based on a conclusion that such an award had no statutory basis or on a finding that the requested witness fees were unreasonable. Therefore, this court cannot effectively review whether the circuit court abused its discretion in granting in part and denying in part the Trustees' request for fees and costs. Accordingly, we must remand to the circuit court for clarification.

### 8. The Trustees' Remaining Claims

The Trustees contend that the circuit court erred in allowing (1) the City to amend its first amended complaint and (2) units 230 and 412 to remain subject to condemnation. As previously indicated, the court had granted the Trustees' motion for partial summary judgment, dismissing the individual lessees

(Weber and Spalding), but allowing their units (230 and 412) to remain in the condemnation action "without prejudice to hear[ing] the City's pending Motion to Amend the First Amended Complaint consistent with the Court's interpretation regarding tacking."

■ Hawai'i Rules of Appellate Procedure Rule 28(b)(7) (2003) requires that an opening brief contain an "argument, containing the contentions of the appellant on the points presented and the reasons therefor, with citations to the authorities, statutes and parts of the record relied on. The argument may be preceded by a concise summary. Points not argued may be deemed waived." Because the Trustee's opening brief fails to include an argument on their claim that the circuit court erred in granting the City's motion to amend its first amended complaint, these points of error are deemed waived.

## B. *The Declaratory Judgment Action*

■ With respect to the declaratory judgment action, the Trustees contend that the circuit court erred in (1) denying their motion for summary judgment and (2) granting the City's motion to dismiss the Trustees' claims as moot or, in the alternative, granting judgment on the pleadings. In their opening brief, the Trustees do not contest that the instant case is moot. Instead, the Trustees argue that the declaratory judgment action falls under an exception to the mootness doctrine for cases that affect the public interest and are capable of repetition yet evading review.

This court has held that

[a] case is moot where the question to be determined is abstract and does not rest on existing facts or rights. Thus, the mootness doctrine is properly invoked where "events ... have so affected the relations between the parties that the two conditions for justiciability relevant on appeal—adverse interest and effective remedy—have been compromised.

*Carl Corp. v. State, Dep't. of Educ.*, 93 Hawai'i 155, 164, 997 P.2d 567, 576 (2000) (citing *In re Application of Thomas*, 73 Haw. 223, 226, 832 P.2d 253, 254 (1992)) (ellipsis in original).

Nevertheless, we have repeatedly recognized an exception to the mootness doctrine in cases involving questions that affect the public interest and are "capable of repetition yet evading review." "Among the criteria considered in determining the existence of the requisite degree of public interest are the public or private nature of the question presented, the desirability of an authoritative determination for future guidance of public officers, and the likelihood of future recurrence of the question."

*Okada Trucking Co., Ltd. v. Bd. of Water Supply*, 99 Hawai'i 191, 196–97, 53 P.3d 799, 804–05 (2002) (citing *Carl Corp.*, 93 Hawai'i at 165, 997 P.2d at 577) (other citations omitted).

The phrase, "capable of repetition, yet evading review," means that "a court will not dismiss a case on the grounds of mootness where a challenged governmental action would evade full review because the passage of time would prevent any single plaintiff from remaining subject to the restriction complained of for the period necessary to complete the lawsuit."

*Id.* at 197, 53 P.3d at 805 (citing *Carl Corp.*, 93 Hawai'i at 165, 997 P.2d at 577).

We are cognizant of the fact that ROH chapter 38 was repealed on February 9, 2005. The Trustees provide no explanation of: (1) why the current dispute, based on a repealed statutory scheme, should be considered public in nature; (2) why an authoritative determination of ROH chapter 38 is desirable in light of its repeal, and (3) the likelihood of a future recurrence of the issues they raise. Thus, the Trustees fail to address the criteria considered in determining the existence of the requisite degree of public interest. Additionally, the Trustees offer no argument as to how a condemnation action under ROH chapter 38 is capable of repetition or why it would evade review. Therefore, we hold that the Trustees have failed to establish that the circuit court erred in dismissing the declaratory judgment action as moot.

### III. *CONCLUSION*

Based on the foregoing, we: (1) affirm the circuit court's award of summary judgment in favor of the Trustees in the condemnation action; (2) remand the issue of the Trustees' request for fees and costs to the circuit court for clarification; and (3) affirm the circuit court's dismissal of the declaratory judgment action as moot.