(FC-S NO. 06-10736) IN THE INTEREST OF A.F.H. AND
(FC-S NO. 06-11077) IN THE INTEREST OF A.H.
Nos. 28891, 28910
Intermediate Court of Appeals of Hawaii.
January 26, 2009.
On the briefs:
Tae W. Kim, for Mother-Appellant.
Joseph Dubiel, for Father-Appellant.
Patrick A. Pascual, Mary Anne Magnier, Deputy Attorneys General, for Petitioner-Appellee.

SUMMARY DISPOSITION ORDER
FOLEY, Presiding Judge, NAKAMURA, and FUJISE, JJ.
Mother-Appellant (Mother) is the natural and legal mother of A.F.H. and A.H. (collectively, "the Children"), who were born in 2004 and 2006, respectively. Father-Appellant (Father) is the adjudicated father of A.F.H. T.W. is the alleged natural father of A.H.
In this consolidated appeal,[1] Mother and Father appeal from the Order Awarding Permanent Custody entered by the Family Court of the First Circuit (family court) on November 16, 2007,[2] in FC-S No. 06-10736, which terminated their parental rights to A.F.H. and awarded permanent custody of A.F.H. to the Department of Human Services (DHS).[3] Mother also appeals from the Order Awarding Permanent Custody entered by the family court on December 3, 2007, in FC-S No. 06-11077, which terminated Mother's and T.W.'s parental rights to A.H. and awarded permanent custody of A.H. to the DHS.[4] T.W. did not appeal.
On appeal, Mother argues that the family court abused its discretion in terminating her parental rights and awarding permanent custody of the Children to the DHS because: 1) there was insufficient evidence to show that she was unwilling and unable to provide the Children with a safe family home with the assistance of a service plan; 2) the DHS had not made reasonable and active efforts to reunify Mother with the Children; 3) there was insufficient evidence to show that the permanent plan's goal of adoption was in the best interest of the Children; 4) the family court granted the foster parents' motion to relocate the Children to California before deciding the motion for permanent custody; and 5) the family court terminated Mother's parental rights before T.W. was served with the motion for permanent custody regarding A.H. in FC-S No. 06-11077.
On appeal, Father argues: 1) the family court erred in finding that he was presently not willing and able to provide A.F.H. with a safe family home and was not likely to become willing and able to provide one in the reasonably foreseeable future; 2) the family court violated his right to due process by failing to give him sufficient time to demonstrate his willingness and ability to provide a safe family home for A.F.H.; and 3) the permanent plan was not in the best interest of A.F.H.
Mother waived her claim of error number 5 and Father waived his claim of error number 3 by failing to make a discernable argument regarding those claims. Hawai'i Rules of Appellate Procedure (HRAP) Rule 28(b)(7); City and County of Honolulu v. Hsiung, 109 Hawai'i 159, 180, 124 P.3d 434, 455 (2005). We will not further address those claims. After careful review of the briefs filed by the parties and the record, we conclude that the other claims raised by Mother and Father are without merit, and we affirm the family court's orders.

I.
We resolve Mother's claims as follows:
1. The family court did not clearly err in finding that Mother was not presently able, and it was not reasonably foreseeable that she would become able, to provide the Children with a safe family home, even with the assistance of a service plan. See In re Jane Doe, 95 Hawai'i 183, 190, 20 P.3d 616, 623 (2001); In re Doe, 103 Hawai'i 130, 135, 80 P.3d 20, 25 (App. 2003). There was substantial evidence to support the family court's finding. This included: 1) Mother's long-standing alcoholism and associated mental health and neurological problems; 2) Mother's placing both of the Children at risk by consuming alcohol during her pregnancies and exposing them to potential difficulties relating to Fetal Alcohol Syndrome; 3) Mother's leaving a treatment program with A.F.H. (who was then under two years old) and being found several days later sleeping in a park next to beer cans, resulting in A.F.H. being hospitalized for dehydration and "failure to thrive" symptoms; 4) Mother's disappearance and failure to appear at hearings for several months during the proceedings; 5) Mother's inability to remain sober outside the structure and supervision of treatment; 6) Mother's inability to control her alcoholism despite sixteen prior attempts at treatment, including her failure to complete three substance abuse treatment programs after the DHS's intervention; and 7) the Children's special needs which require a full-time caretaker.
2. Mother contends that the DHS did not make reasonable and active efforts to reunify her with the Children. In particular, she suggests that the DHS failed to provide her with adequate mental health services. We conclude that Mother is not entitled to any relief on this claim because she failed to show that any alleged deficiency in the services provided by the DHS resulted in substantial prejudice to Mother. See In re Doe, 100 Hawai'i 335, 343-44, 60 P.3d 285, 293-94 (2002).
Mental health treatment and therapy were included in the substance abuse treatment programs that Mother participated in after the DHS's intervention. The principal basis for the family court's decision was Mother's inability to remain clean and sober in an unstructured environment. Mother does not explain how additional mental health services would have prevented her from relapsing. In any event, if Mother believed that the services provided by the DHS were inadequate, she was required to make a timely request for additional services. See id. at 344, 60 P.3d at 294 ("Manifestly, a claim for additional services and accommodations must be timely made."). Mother has not demonstrated that she requested additional mental health services and she thus failed to preserve her claim for appeal. Id.
3. There was sufficient evidence to show that the permanent plan's goal of adoption was in the best interests of the Children. A DHS social worker supervisor testified without contradiction that the DHS had determined that the permanent plan was in the best interests of the Children. The DHS's determination is supported by the evidence in the record which indicates that: 1) A.F.H. and A.H. have special needs, are both young, and are in need of a permanent caretaker; 2) A.F.H. has bonded with foster parents, with whom A.H. was also recently placed; and 3) both A.F.H. and A.H. have spent more time in foster custody than with Mother and Father.
4. We reject Mother's claim that the family court erred in granting the foster parents' motion to relocate the Children to California before deciding the motion for permanent custody. Because of the foster father's military transfer, the foster parents filed a motion to permit them to take the Children to California. On October 29, 2007, the family court "granted" the motion to the extent that it permitted the foster parents to ship the Children's personal items to California, with the understanding that the foster parents would be responsible for returning the items if the family court determined that the Children should remain in Hawai'i. The family court, however, ordered that the Children remain in Hawai'i until further order of the court.
Trial on the DHS's motions for permanent custody as against Mother and Father was held on November 15, 2007. On November 19, 2007, the family court issued orders awarding permanent custody of the Children to the DHS and authorizing the foster parents to relocate the Children to California. Thus, the record shows that the family court delayed its decision on whether the Children could be moved from Hawai'i until it decided the motions for permanent custody as against Mother and Father. We detect no error in the family court's the foster parents' motion.

II.
We resolve Father's claims as follows:
1. The family court did not clearly err in finding that Father was not presently willing and able, and it was not reasonably foreseeable that he would become willing and able, to provide A.F.H. with a safe family home, even with the assistance of a service plan. There was substantial evidence to support the family court's finding. This included evidence that: 1) Father decided to place A.F.H. in protective police custody so he could go to work, rather than remain home to care for A.F.H.; 2) Father was arrested on charges of second-degree theft and incarcerated in November 2006; 3) Father subsequently was convicted of that charge and sentenced to five years of imprisonment; 4) at the time of the November 2007 hearing on permanent custody. Father's minimum parole term had not been set and he was seeking placement in a one-year work furlough program as a precondition for parole, during which he could not live with a child; 5) prior to being incarcerated. Father had not fully participated in service plans and had failed to appear at a review hearing on November 1, 2006; 6) Father has potential unresolved substance abuse problems and lacks insight as to the harm he and Mother caused A.F.H.; and 7) A.F.H. has special needs which require a full-time caretaker.
Hawaii Revised Statutes (HRS) § 587-73(a)(2) (2006) provides that the period of time for determining whether it is reasonably foreseeable that a parent will become willing and able to provide a child with a safe family home "shall not exceed two years from the date upon which the child was first placed under foster custody by the court."
The family court was entitled to consider Father's incarceration as a factor in its decision on whether Father would be capable of providing a safe family home in the foreseeable future. In re Doe, 100 Hawai'i at 345-46, 60 P.3d at 295-96. A.F.H. was taken into foster custody on January 24, 2006. At the time of the November 2007 hearing on the DHS's motion for permanent custody. Father!s minimum parole term had not yet been set, and he was seeking placement in a pre-parole one-year work furlough program. Thus, it was unlikely that Father would be released from incarceration within two years from the date that A.F.H. was first placed into foster custody.
The family court's decision was not rendered erroneous by Father's proposal to have his sister care for A.F.H. while he was incarcerated. See In re T. Children, 113 Hawai'i 492, 499, 155 P.3d 675, 682 (App. 2007). The DHS investigated the possibility of having Father's sister serve as a foster parent. Father's sister may have been willing, but the DHS determined that she was not suitable because her job schedule and the needs of her disabled husband would not allow her to provide the type of 24-hour care required by A.F.H. Father's sister also declined to assume responsibility for A.H. and the DHS determined that the Children should stay together.
2. We reject Father's claim that his due process rights were violated because the family court did not give him sufficient time to demonstrate his willingness and ability to provide a safe family home. The family court awarded foster custody of A.F.H. to the DHS on January 24, 2006. At that time. Father's paternity regarding A.F.H. had not been established and Father's whereabouts were unknown. In July 2006, Father acknowledged being served with the Petition for Temporary Foster Custody regarding A.F.H., and on August 4, 2006, Father stipulated to the award of temporary foster custody to the DHS and to the July 28, 2006, service plan. Father, however, did not fully participate in the services required by the service plan and failed to appear at a review hearing on November 1, 2006. In November 2006, Father was arrested for second-degree theft and incarcerated. He was later convicted and sentenced to five years of imprisonment. On August 3, 2007, the DHS filed its Motion for Order Awarding Permanent Custody. On November 19, 2007, after a hearing on the DHS's motion for permanent custody, in which Father participated and was represented by counsel, the family court granted the DHS's motion.
The record does not support Father's claim he was denied due process because he was not given sufficient time to demonstrate his willingness and ability to provide a safe family home. Instead, the record shows that Father was given adequate opportunity to demonstrate his fitness as a parent. The family court rendered its decision based on the reasonable time period prescribed by HRS § 587-73(a)(2), and Father provides no authority that would permit us to rewrite the statute. Moreover, in this case, it was not the alleged shortness of time that prevented Father from establishing his parental fitness, but rather the negative effects flowing from his lengthy incarceration and the other deficiencies in Father's behavior.

III.
We affirm the Order Awarding Permanent Custody filed on November 16, 2007, by the family court in FC-S No. 06-10736 and the Amended Order Awarding Permanent Custody filed on December 11, 2007, by the family court in FC-S No. 06-11077.
NOTES
[1] Appeal No. 28891 relates to FC-S No. 06-10736 and A.F.H. Appeal No. 28910 relates to FC-S No. 06-11077 and A.H. Father is the appellant and Mother is the cross-appellant in Appeal No. 28891. Mother is the appellant in Appeal No. 28910.
[2] The Order is file-stamped November 16, 2007, but is dated as signed on November 19, 2007.
[3] The Honorable Nancy Ryan presided.
[4] On December 11, 2007, an Amended Order Awarding Permanent Custody was entered in FC-S No. 06-11077 to correct the date of the court-ordered permanent plan hearing. We will construe Mother's notice of appeal filed in FC-S No. 06-11077 as appealing from the Amended Order Awarding Permanent Custody. The Honorable Frances Q.F. Wong entered the Order Awarding Permanent Custody and the Amended Order Awarding Permanent Custody in FC-S No. 06-11077.